STATE OF TENNESSEE *ex rel.*, COMPLAINANT, APPELLANT, *v.* R. B. HAMMONS *et al.*, DEFENDANTS, APPELLEES.

(*Knoxville*, September Term, 1933.)

Opinion filed October 21, 1933.

BROWN & SPURLOCK and CHAS. C. GUINN, for complainant, appellant.

D. SULLINS STUART, for defendants, appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is in the nature of a *quo warranto* proceeding, and involves title to the office of Justice of the Peace in the Second Civil District of Polk County.

The bill alleges that relator, Jim Pike, was duly elected to said office at the regular election on Thursday, August 7, 1930; that on the following Monday the Board of Election Commissioners for said county met in the courthouse at Benton, canvassed the returns, declared relator duly elected on the face of the returns, and issued to him a certificate of election; that on the next day two of said election commissioners issued a certificate of election to his opponent, R. B. Hammons, to whom the governor of the State subsequently issued a commission as a justice of the peace; that said Hammons duly qualified and is discharging the duties of said office; that said Hammons was not elected to said office, is a usurper, should be so declared, and relator decreed entitled to the office.

In *State ex rel. v. Hammons,* 163 Tenn., 294, it was held that this was not an election contest suit, since relator did not propose to go behind the returns, and that if the allegations of the bill were sustained by the proof relator would be entitled to the relief sought.

Hammons filed an answer, and later a cross-bill, in which two of the election commissioners, Lillard and Lowery, joined. In the answer and cross-bill it was averred that upon a canvass of the returns said two commissioners found that Hammons was elected upon the face of the returns, but that on account of threats of violence and duress on the part of the partisans of Pike they issued a certificate to the latter, but immediately

telephoned to the governor the circumstances under which said certificate was issued, with a request that he issue no commission to relator; and that as soon as they could have a certificate prepared they executed same, showing that Hammons received a majority of the votes on the face of the returns.

Upon the issues thus made proof was taken and the cause was heard by the Chancellor, who found in favor of cross-complainants and dismissed the original bill. Complainant has appealed and assigned errors to the decree of the Chancellor. This court knows that for many years there has been a bitter partisan feeling between two nearly evenly divided factions in Polk County, resulting in numerous election contests, ouster suits, and *quo warranto* proceedings. In the 1930 election the contests for the several offices to be filled and for the control of the county court were heated and bitter. Numerous suits growing out of that election have been before this court.

In the contest for Justice of the Peace in the Second Civil District there were four candidates, Pike, Hammons, Parker, and Stillwell. Stillwell received more votes than either of his opponents, and his election was conceded. Parker received the smallest number of votes and was eliminated. On the face of the returns Hammons received one more vote than Pike; that is, the tallies gave Hammons a majority of one. In adding the tallies several errors were committed, but the tallies should control. It is alleged by relator that on the face of the returns it appears that several tallies had been inserted after the vote had been certified, but after a careful examination of the scrolls we concur with the Chancellor in holding that the evidence does not sustain this charge.

The record is quite a large one, and we shall not undertake to detail the evidence upon the question of duress. Actions sometimes speak louder than words, and in this case the movements of the two commissioners before and after the vote was canvassed convince us that they were intimidated and forced to execute a certificate to relator.

There can be no question but that a large number of relator's partisans came to Benton on the morning that the returns were to be canvassed. Some were drinking and a number admit that they were armed with pistols. There was much excitement in the town. These commissioners were notified that their lives had been threatened and that they were in danger. They were so frightened that they refused to go to the courthouse and canvass the returns. About two o'clock that afternoon the leader of the Pike-Harrison faction proposed to the commissioners that they go to the courthouse, accompanied by ten members of each faction, and canvass the returns, and that no other persons were to enter the room where they were to work. In these circumstances the commissioners repaired to the courthouse and began performing their duties. Before they had finished, according to their testimony, they were ganged by members of the Pike-Harrison faction, a pistol was drawn on them, and their lives threatened unless they issued a certificate to Pike. As soon as they could get away they entered a car and drove to Etowah, where they telephoned to the governor at Nashville, as heretofore detailed. They then drove to Maryville to counsel and advise with the circuit judge of that circuit. They returned by way of Madisonville, with the intention of obtaining a blank certificate of election from Nick McDaniel, a member of the Election Commission of Monroe County. Mr. McDaniel did not

have a blank, but wrote out a form for them to use, which they, as chairman and secretary respectively of the commission, executed in Benton the next morning. Both commissioners testified that their conclusion was that Hammons was elected upon the face of the returns. Necessarily great weight should be given to the testimony of the commissioners in these circumstances. Quite naturally these bitter partisans are not going to admit misconduct upon their part, but in view of all the facts and circumstances we think the Chancellor, who is better acquainted with local conditions and surroundings than we are, was fully justified in finding that the issuing of a certificate to relator was not a free act upon the part of the commissioners, but that it was involuntary, the result of threats of violence and intimidation.

In situations of this kind it is the duty of the courts to protect such officers regardless of their politics, and see that they are permitted to perform the functions of their office without being coerced, intimidated, or threatened. It frequently happens that where a vote is close the partisans of the respective candidates work themselves into an unnecessary passion and say and do things that are improper. In this case, and in all like cases, it is the duty of the candidates and their friends to let the commissioners perform their duties without any interference or molestation, and if the result as announced is erroneous or fraudulent institute contest proceedings, and the courts are always open to see that an election is purged of any illegal votes or of any fraud committed by any of the officers of election or members of the election commission.

In this particular case it is claimed that in the Greasy Creek Precinct ten tallies were added to Hammons' vote,

and five in the Springtown Precinct, after the election had been certified. Upon a contest it would not be difficult to establish these facts if they are true.

 It is not contended that complainant has a valid certificate if it was issued by the commission as a result of duress by the friends of relator. When personal fear is aroused by threats so as to compel a person to make a contract, or do an act which he would not have otherwise done, such contract or act is null and void. *Bogle* v. *Hammons,* 49 Tenn., 137; *Belote* v. *Henderson,* 45 Tenn., 471.

 It is plausibly argued that upon the issuance of the certificate to relator it was incumbent upon Hammons to institute an election contest. We think otherwise where the certificate so issued was void. Hammons had a right to disregard it. The fact is, however, that Hammons had gone home sick, and was not present when the certificate was issued to relator. The record tends to indicate that Hammons did not intend to contest if Pike received a majority of the votes upon the face of the returns. In any event, he should not have to suffer on account of the wrongful acts of relator's supporters.

It is said that as a result of the conduct of the commissioners in issuing two certificates of election relator was deprived of the privilege of instituting a contest proceeding. This is chargeable to the wrongful activities of relator's partisans, and is a matter for which Hammons is in nowise responsible.

Error is also assigned upon the action of the Chancellor in permitting the filing of the cross-bill. This is not of enough importance to merit discussion. If relator cannot recover on his bill, then the filing of the cross-bill and the action of the court thereon is immaterial so far as he is concerned. It is possible, of course, that the re-

turns were changed after they were certified by the election officers, and relator may have received a majority of the votes. To establish this fact relator should have resorted to the remedy afforded him by statute instead of permitting his supporters to take the law into their own hands. Such conduct as they were guilty of cannot be condoned by the courts.

For the reasons set forth herein, we feel constrained to affirm the decree of the Chancellor.