STATE *ex rel.* BRYANT *v.* MAXWELL.

(*Knoxville,* September Term, 1948.)

(May Session, 1949.)

Opinion filed July 2, 1949.

Rehearing Denied December 17, 1949.

Tom J. Davis, of Chattanooga, George E. Westerberg, of Cleveland, for complainant.

H. D. KERR and HARDWICK STUART, of Cleveland, for defendant.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is a suit in the nature of a *quo warranto* proceedings instituted under Code Section 9336 et seq. in Chancery Court by the District Attorney General upon relation of Ernest Bryant, a resident and qualified voter of the town of Cleveland in Bradley County. The defendant is J. L. Maxwell of said county and town. The charge is that Maxwell is unlawfully attempting to qualify as and hold and exercise the office of a Justice of the Peace of Bradley County for the municipality of Cleveland under a commission issued by the Governor shortly after the general election of August 5, 1948, this commission being issued by reason of a certificate of election issued by two of the three election commissioners of Bradley County. On the facts hereafter stated an injunction is sought upon final determination of the question, it being alleged that no election was in fact held; consequently, that the subsequent credentials are void.

Maxwell demurred to the bill on the ground that this is an election contest; therefore, jurisdiction is vested only in the court authorized by the statute to hear and determine a contest of an election to this office. By Code Section 2112, it is the county court that is authorized to hear and determine cases of contested elections of Justices of the Peace. By Code Section 9350 the *quo warranto* statute referred to cannot be employed in an election contest. Therefore, by reason of these two code sections, and by reason of the insistence that this is an

190

election contest, the theory of the demurrer is that the Chancery Court has no jurisdiction. The appeal is from the decree of the Chancellor overruling the demurrer and sustaining the bill.

It may as well be observed at the outset that if this is an election contest, then the decree of the Chancellor is erroneous, since it is settled that chancery does not have jurisdiction of such a suit. *State ex rel. Thurman* v. *Scott,* 184 Tenn. 76, 195 S. W. 2d 617, is the last of a long line of cases to that effect. It is equally as true, however, that "the contest of an election is one thing, and the contest of the right of a party to hold office may be a totally different thing". *State ex rel.* v. *Wright,* 57 Tenn. 237, 246-247. A suit to determine the right of a party to a public office may or may not be an election contest. *State ex rel.* v. *Grindstaff,* 144 Tenn. 554, 560, 234 S. W. 510. Whether the instant case is such a suit, or may be maintained as a *quo warranto* proceedings must be determined by the allegations of fact in the bill to which Maxwell has demurred.

The charter of Cleveland directs that the election of its municipal officers be held on a specified date in October of even years. For many years it has been the practice in Cleveland to elect its city Justice of the Peace at that time notwithstanding the clear requirement of Article 7, Section 5 of our Constitution that such official be elected at the general election held on the first Thursday in August, of even years next preceding the expiration of the previous term.

A citizen of Cleveland by the name of Haven challenged the clear illegality of holding this election in October. He presented a proper petition within proper time to the election commission of Bradley County re-

questing that his name be placed upon the ballot as a candidate in the general August election of 1949 for Justice of the Peace from the town of Cleveland. The Election Commission refused to place his name upon the ballot with the statement that the election for this office would be held in October, as usual, and would not be held in the general election in August. Relator Bryant presented a petition asking that his name be put upon the ballot in the election which he then contemplated would be held for this office in October. It was not done, and no such election was held in October, 1948.

Printed on the only ballots which the Bradley County Election Commission had prepared for the election to be held in the Fourth Civil District of Bradley County in the general election of August, 1948 were these words: "For Justice of the Peace, Fourth District (Vote for Three)". Cleveland is in the Fourth District of Bradley County. It is entitled to three Magistrates from the district as a whole, and one to be elected by the voters of the town of Cleveland. Code Sections 674 and 675. All the voters of the Fourth District were, of course, entitled to vote for those three magistrates. The voters of the town of Cleveland, and only those voters, were likewise entitled to vote for a fourth magistrate, the city magistrate.

Notwithstanding this, the only ballot made available by the election commission at the August election made no provision for election of a city magistrate for Cleveland. Insofar as the ballot reflected the fact, no election was being held for that office in the general August election. This was in keeping with the statement of the commissioners to Haven that such election would not be held in the August election. It was likewise in keeping with

an illegal practice of many years, no doubt because of ignorance of the law. However, the bill alleges in substance that such ignorance did not obtain in 1948 upon the part of a majority of the election commission and Maxwell, and that their conduct was motivated by a conspiracy to get Maxwell this office without the hazard of an election. Whether this is or not true, the same result will follow here a legally ineffective act, whether done with fraudulent intent or by honest mistake.

The aforementioned ballots were made available alike to Fourth District residents in or out of the town of Cleveland, and all ballots were placed in the same ballot box. Once a ballot was deposited in the box, there was no way of determining whether the vote had been cast by a person living within or without the corporate limits of Cleveland. In short, no machinery whatever was set up for the election of a city magistrate by the election commission. No such election was being held, insofar as appearances, machinery, or possibilities were concerned.

In counting the ballots after the close of the polls in the general election of August 5, the election officers found six ballots upon each of which there was written presumably by the voter, the following: "J. L. Maxwell as a Justice of the Peace for the municipality of Cleveland, Tennessee". The J. L. Maxwell referred to in the ballots just mentioned is the defendant here.

The town of Cleveland had many hundreds of voters who presumably participated in the August 5 election. These six "write ins" were the only ballots in the boxes which reflected an intention to vote for a city magistrate of Cleveland. There was, of course, no possibility of intrinsically ascertaining whether those were the ballots of Fourth District voters within or without the town of Cleveland. They could have been either or both.

The only conclusion to be reached from the facts stated is that no election was held for a Fourth District Justice of the Peace from the town of Cleveland in the August 5, 1948 general election. Previous practice and present conduct of the election commission each necessarily led the voters to believe that no such election was being held. To decide otherwise would amount to a disfranchisement as to this office of practically all the voters in the large town of Cleveland. These voters were without fault in the matter.

The case of *Barry* v. *Lauck,* 45 Tenn. 588, though not as strong for relator on its facts as the instant case, is much in point. Quoting from Cooley, 45 Tenn. page 597, the Court there said: ''That can not be called an election, or the expression of the popular sentiment, where a part only of the electors have been allowed to be heard, and the others, without being guilty of fraud or negligence, have been excluded.''

The case of *State ex rel.* v. *Cates,* 105 Tenn. 441, 58 S. W. 649, is in point. A statement of its facts sufficient here is that in the general election of August 1900 two Justices of the Peace were to be elected for the 24th Civil District of Knox County. A part of Knoxville was in that district. The relator Flournoy received the third highest number of votes in the election. He contended that since part of Knoxville was located in this civil district, the law authorized three Justices of the Peace for the district; that since he had received the third highest number of votes he was entitled to a commission equally with the other two successful candidates. While his position was otherwise unsound, the Court in disposing of the contention said, 105 Tenn. page 447, 58 S. W. page 650: ''In conclusion, we may add that there is no view of the

case in which the relator can rightfully claim to have been elected a Justice of the Peace for the Twenty-fourth civil district. In the first place, there was no election held for three justices in said district, but the voters were instructed by the commissioners of registration, by printed notices on the face of the official ballot, to vote for two justices.''

So, in the instant case, the voters of Cleveland were instructed to vote for three Justices of the Peace from Fourth District of Bradley County, but not for the fourth Justice of the Peace from the town of Cleveland.

In 158 A. L. R., page 1194, under a discussion of such a situation as we have here is the following statement of the writer: ''Thus, where the ballot for a general election did not designate the office of county attorney as an office to be filled and no names of any candidates for that office were placed thereon and no notice was given to the voters that a county attorney would then be elected, and the petitioner did not announce his candidacy for that office, and it further appeared that the petitioner received only seven votes cast by voters who wrote his name on the ballots and indicated that they voted for him for the office of county attorney, it was held in *Wooton* v. *Wheeler* (1912) 149 Ky. 62, 147 S. W. 914 . . . that the voters were entirely ignorant of the fact that an election for county attorney was being held and, hence, there was no such expression of the public will as to establish a valid election of the petitioner.''

By reason of these six write in votes a majority of the Bradley County Election Commission saw fit to issue Maxwell a certificate of election as a Justice of the Peace of the Fourth Civil District of Bradley County for the town of Cleveland. Based upon that certificate, the Gov-

ernor issued Maxwell a commission as such official. The Governor, of course, had no information about the matter other than the certificate of the election commission.

"Title (to the office) comes at last from election by the people, and neither the certificate nor the induction can supply the place of it." *State ex rel.* v. *Wright,* 57 Tenn. 237, 253. These documents are merely evidence of the results of an election. Since no election was held, the certificate of the election commission certifying the results of an election that was never held was void. The commission of the Governor issued pursuant to such void certificate was likewise void. *Barry* v. *Lauck,* 45 Tenn. 588, 599.

In the many cases in which this Court has held that the proceedings must be by way of an election contest rather than under the *quo warranto* statute, an election had been held. The validity of the election so held was challenged by reason of some illegal act or acts and frauds or required acts omitted during the course of the election. In order to investigate those questions of fact it was necessary to go behind the returns of the election. That amounted in law to an election contest. In *Adcock* v. *Houk,* 122 Tenn. 269, 276, 122 S. W. 979, 981, the rule is stated in this language: "Where the questions raised by the litigation necessitate going behind the returns, the case presented is an election contest, whether the judgment to be rendered under the pleadings be that one or the other of two contesting parties has been elected, or that there has been no legal election at all."

On the other hand, this Court from an early date has recognized in cases where it was not necessary to go behind the election returns the jurisdiction of the Chancery Court in a suit by *quo warranto* proceedings which

challenged the legal right of a party to hold a public office. *State ex rel.* v. *Glenn,* 54 Tenn. 472, and *State ex rel.* v. *Wright,* 57 Tenn. 237, are illustrations of such cases. The jurisdiction of chancery has likewise been recognized in cases seeking to determine the question by way of *mandamus* when it was not necessary to go behind the returns. *State ex rel.* v. *Grindstaff,* 144 Tenn. 554, 234 S. W. 510 is illustrative. There jurisdiction was taken though the Court observed that it closely approached an election contest.

Perhaps more nearly in point here is the case of *State ex rel.* v. *Hammons,* 166 Tenn. 469, 63 S. W. 2d 660. That case had come to this Court before, and was reported in 163 Tenn. 290, 43 S. W. 2d 395. When it came back in 166 Tenn., as a proceeding in the nature of a *quo warranto,* this Court at the outset, page 470, called attention to its previous holding in the case with this statement: ''It was held that this was not an election contest suit, since relator did not propose to go behind the returns, and that, if the allegations of the bill were sustained by the proof, relator would be entitled to the relief sought.'' 63 S. W. 2d 660. That statement is applicable in the case at bar, since it is not proposed in this case to go behind the returns of the election. There was no election. Therefore, there could be no returns to go behind.

Also of importance here is the holding of this Court in the *Hammons case, supra,* 166 Tenn. 469, 63 S. W. 2d 660, in response to the insistence that a certificate of election having been issued Hammons' relief was confined to an election contest. The response of this Court, 166 Tenn. page 474, 63 S. W. 2d page 661, was: ''It is plausibly argued that upon the issuance of the certificate to relator,

it was incumbent upon Hammons to institute an election contest. We think otherwise where the certificate so issued was void.''

On principle and on the authority of the cases to which we have just referred, our conclusion is that, no election having been held and the certificate and commission under which Maxwell proposes to qualify and hold and exercise the office of the Justice of the Peace for the town of Cleveland being void, this *quo warranto* proceedings was authorized, and the Chancellor was correct in so holding.

We are of the opinion that the absence of the District Attorney General from the particular hearing in which the merits of the demurrer were discussed did not require a dismissal of the bill. By consenting to the hearing thereof in his absence he did not thereby surrender his control of the case.

Since it appears from the face of the bill and as admitted by the demurrer that Mr. Maxwell holds no title to the office, hence without right to hold it, there is nothing left open for future litigation. The Chancellor was correct, therefore, in enjoining him from attempting to hold and exercise the functions of the office. *State ex rel.* v. *Bratton,* 148 Tenn. 174, 184, 253 S. W. 705.

The decree of the Court below is affirmed with costs adjudged against the appellant Maxwell and the sureties on his bond.

All concur.