State *v.* McConnell.

3L 332
4L 648
6L 104
8L  75
8L 290
9L 647
12L 254
3pi 163
4pi 141

3L  332
116   43

STATE *ex relatione* v. McCONNELL.

1. CHANCERY PRACTICE AND PLEADINGS.    *Bill in name of the State.*  *Attorney General a necessary party.*    *When.*    The Attorney General is a necessary party complainant to a bill filed in the name of the State, on the relation of a third person, to test the title of a Circuit Judge to the office under the Code, section 3409 *et seq.*

2. CONSTITUTIONAL LAW.    *Act creating Judicial Circuit.*    Under an act entitled an act to create and establish a new judicial circuit, a change in adjoining circuits by detaching one county from one of these circuits and attaching it to another, is sufficiently germane to the object as to be embraced in the caption as one subject, under the Constitution, Art. 2, sec. 17, and the positive provision takes the act out of that class of cases intended by that part of the same section of the Constitution which relates to " acts which repeal " former laws.

**3. SAME.** *Constitution, Art. 2, Sec. 18. Failure of Journals to show all the readings of an Act.* The mere fact that the Journals of the Senate fail to show the second reading of a bill, will not affect its validity as an act, when it appears that it was passed on three several readings in the House of Representatives, and two readings in the Senate, one ot them purporting to be the third reading, at which time it was passed with all the requisite formalities, and that it was signed by the Speaker of each House in open session, and approved by the Governor, in accordance with the requirements of the Constitution, Art. 2, section 18.

---

FROM SMITH.

---

Appeal from the Chancery Court at Carthage. W. G. CROWLEY, Ch.

J. J. TURNER for complainant.

E. L. GARDENHIRE for defendant.

COOPER, J., delivered the opinion of the court.

By an act of the General Assembly, passed on the 14th of March, 1873, and taking effect from its passage, entitled "An act to create and establish the sixteenth judicial circuit in this State," a new judicial circuit was established, one county of which, namely Overton county, was taken from the fifth judicial circuit. By the fifth section of the same act, the county of Trousdale was detached from the seventh and attached to the fifth judicial circuit, and by the seventh section the Judge and Attorney General of the fifth circuit were assigned to hold and attend the courts of that county.

The change was carried into effect, and the county of Trousdale from that time became practically a part

of the fifth judicial circuit. At the general election of Judges in this State, held in August, 1878, the defendant, N. W. McConnell, a citizen of Trousdale county, was elected Judge of the fifth judicial circuit, and was commissioned by the Governor as such. On the 30th of October, 1878, this bill was filed, in the name of the State of Tennessee, by N. B. Williams, relator, against N. W. McConnell, calling in question his title to the office of Judge of that circuit, upon the ground that the act of the 14th of March, 1873, was not read three times in one branch of the General Assembly, and the further ground that the fifth and seventh sections were not embraced within the caption of the act, nor was the pre-existing statute by which Trousdale county was made a part of the seventh judicial circuit constitutionally repealed.

Williams, the relator, was not one of the candidates voted for in the judicial election, but was a citizen of one of the counties comprising the fifth circuit. The bill was filed by private counsel employed by him, and neither signed nor sanctioned by the Attorney General for the district, nor the Attorney General for the State. Upon demurrer, assigning as one of its causes that a bill to remove a public officer on relation of a citizen, would only lie in the name of the Attorney General, the Chancellor dismissed the bill and the relator appealed.

The bill on its face purports to be filed "Under the Code, sections 3409 to 3431, and in the nature of a *quo warranto* proceeding at common law, to declare said McConnell a usurper of said office, and not en-

titled to exercise its powers, perform its duties, or receive its emoluments." The demurrer upon these allegations squarely raises the question, whether a bill on the relation of a private citizen, without the intervention of the Attorney General, can be sustained under the provisions of the Code on which the bill is confessedly based.

It was held at an early day by this court, that neither the ancient writ of *quo warranto*, nor the information in the nature thereof, was ever in force in this State, and this decision has been adhered to. *State* v. *Turk*, M. & Y., 286; *Attorney General* v. *Leof*, 9 Hum., 755. Both the State and individuals were remitted to other remedies for the accomplishment of the ends aimed at by those proceedings. The Legislature, from time to time, passed acts which were intended to answer, in particular instances, the same purposes. Some of these acts, with supplementary provisions, were brought forward into the Code. By statutory provisions then enacted into law, particular modes were pointed out for contesting elections, and, independently, for preventing the usurpation of an office. It has been held that the two classes of cases are entirely distinct. A contested election, this court has said, is not a case to which the State is a party, nor is it the duty of the district Attorney General to attend. The contest is, it is added, not analogous to a bill in the nature of a writ of *quo warranto*, and it cannot be tried under the provisions of the Code, sections 3409 to 3423. *Boring* v. *Griffith*, 1 Heis., 456.

This bill is expressly filed under the sections thus

referred to. These are the provisions of the Code manifestly designed to supply the place of the writ of *quo warranto,* or of the information in the nature thereof, which were held not to be in force. They do undertake to provide a remedy "whenever any person unlawfully holds or exercises any public office or franchise, or any office in any corporation created by the laws of the State." The same mode of redress is provided "whenever any public officer has done or suffered to be done any. act which works a forfeiture of his office," and when a corporation does or omits acts which amount to a surrender or forfeiture of the rights and privileges* of a corporation. So if any persons act as a corporation without authority of law, or any corporation exercises powers not conferred by law, or fails to exercise powers conferred which are essential to the corporate existence. So. to bring officers of corporations, or trustees of funds given for a public or charitable purpose, to account. In all these, as well as some other enumerated cases,. the remedy provided is thus stated:

"3411. The suit is brought by bill in equity, filed either in the circuit or chancery court of the county or district in which the office is usurped or held, or the corporation or supposed corporation holds its meetings or has its principal place of business.

"3412. The suit is brought by the Attorney General for the district or county, when directed so to do. by the General Assembly or by the Governor and Attorney General of the State concurring.

"3413. It is also brought on the information of

any person, upon such person giving security for the costs of the proceedings, to be approved by the clerk of the court in which the bill is filed."

The purposes for which the suit "by bill in equity" is given by the sections of the Code referred to, are those which were attained at common law by the writ of *quo warranto,* or by information in the nature thereof. In other words, the statute gives a new remedy for old wrongs. The settled rule in such case is to construe the law so as to interfere as little as possible with the previous practice, and the decisions of the court on the subject of legislation.

The bill authorized to be filed is, to use the language of the opinion in *Boring* v. *Griffith,* above quoted, "a bill in the nature of a writ of *quo warranto,*" and therefore unlike a contested election case, requiring in its very nature the State to be a party by its Attorney General. The writ of *quo warranto* was a high prerogative writ for the sovereign or government, suable only by the public prosecutor. High on Ext. Rem., sec. 591. It would seem to follow logically under the rule mentioned, that the "bill in equity" for the same purpose, in lieu of the old writ, could only be filed by the State's officer.

But the provisions of the Code embraced in the sections above quoted in *haec verba,* are taken from the act of 1846, ch. 55, secs. 5 and 6. Section 5 of that act provides that the Attorney General, on behalf of the State, may file a bill in the circuit or chancery court "whenever it may be deemed proper by the Legislature of the State, or the Governor and Attorney

General for the time being, the latter officers concurring therein, that judicial inquiry shall be instituted to ascertain whether any corporation, by non-user or abuse of its franchises, has incurred a forfeiture of its charter." Section 6 commences thus: "When the said bill in equity shall be filed by the Attorney General at the relation of any individual or individuals, it shall be lawful for the court in its discretion to require bond," etc. That act clearly contemplates that the bill which may be filed for any of the purposes therein provided for, shall be filed by the Attorney General, whether it be by direction or on information. Its provisions are brought forward into the Code, in sections 3409 to 3413.

One general rule in the construction of the Code is, " thas in doubtful cases it will be presumed that it was not intended to change but only to revise or compile the old statutes." *Bates* v. *Sullivan,* 3 Head, 633; *Tennessee Hospital* v. *Fuqua,* 1 Lea, 611; see also *Clement* v. *Kaighn,* 2 McCarter, 56.

The reading of sections 3412 and 3413 together, leads to the same conclusion, without reference to the pre-existing law. The "suit," says section 3412, "is brought by the Attorney General, when directed by the General Assembly." "It is also brought," says section 3413, "on the information of any person." By whom? Manifestly by the Attorney General.

The section does not say that the suit shall be brought by the relators, but on their information. The sense and grammar of the two sections require, by necessary implication, the suit on relation to be by

the same person as the suit when directed, and that person is the State's Attorney. Beyond all doubt the suit provided for under these sections was intended to be a suit by the State to. subserve the public interests, and this end can only be attained by having the State represented by its proper officer.

It is true the act of 1846 does not undertake to provide a remedy for the usurpation and forfeiture of public office. But the remedy provided by the Code is precisely the same for all classes of cases enumerated. If the Attorney General is a necessary party to a suit, "by bill in equity," on information touching a · corporation, he is equally necessary where the suit relates to the usurpation of a public office.

No good reason has been suggested or occurs, why the new remedy given · by the statute should not be controlled by the State, 'as was the old remedy which it was intended · to replace. The authorities are numerous and uniform, both in England and America, that where the object is to declare a forfeiture of a charter of incorporation, the government alone can institute the proceedings. High on Ext. Rem., section 654; Ang. & Ames on Corp., 747, and cases cited. The , reason is, that the government having created the corporation for the purposes declared in its charter, ought to have a voice in its destruction. It may waive a forfeiture which the court can only declare. *The State* v. *Merchants Ins. & Tr. Co.*, 8 Hum., 235–255; *Murphy* v. *Farmers Bank*, 20 Pa. St., 415; *State ex rel.* v. *White's Creek Turnpike Co.*, 3 Tenn. Ch., 163. *A fortiori*, ought the State, as representing the people,

to be heard in a proceding to test the title to a public office, and the authorities are equally uniform to this effect. High on Ext. Rem., section 623 *et seq.;* *State ex rel.* v. *Leonard,* 3 Tenn. Ch., 177. The right of a private person to contest an election to a public office rests upon the statute, and can in no way impair the right of the government. *People* v. *Holden,* 28 Cal., 123. In every other case provided for by the Code, as for example the calling to account the trustees of a public charity, the necessity of the State being represented is equally obvious.

Whether the previous consent of the court is required before a bill can be filed by the Attorney General on information under the provisions of the Code, is a point not raised by the record, and need not be considered. See High on Ext. Rem., sec. 605. Be this as it may, the court is of opinion that a bill on information, under the Code, section 3413, can only be filed by the Attorney General.

The court is also of opinion that the demurrer is well taken on the merits. The establishment of a new judicial circuit in a State already divided into circuits, must necessarily require some change in the circuits previously existing, and such change may well be considered as germane to the subject and embraced in a caption embodying the general object. *Cannon* v. *Mathes,* 8 Heis., 504. And the positive provision of the act by which a designated county is expressly detached from one circuit and attached to another, takes the act out of the class of cases intended by that part of the 17th section of the second article of

the Constitution of 1870, which relates to "all acts which repeal" former laws.     *Morrill* v. *Fickle*, 3 Lea. The bill concedes that the act under consideration was signed by the speakers of both Houses of the Legislature, and by the Governor, after having been properly passed on three several readings in the House of Representatives, and two readings certainly in the Senate, one of these purporting to be the third reading, when the vote was taken by ayes and noes.

It was conceded in argument that the Journals of each House show the passage of the bill on its third reading with all the constitutional formalities.

Under these circumstances, the presumption in favor of the regularity of the passage of the act through all its stages is so strong that the mere failure of the Journals of the Senate to show a second reading, if the fact be that way, would not affect its validity, but would be treated as a clerical omission.

It is not pretended that parol evidence would be admissible to sustain the averment of the bill.

The Chancellor's decree sustaining the demurrer, and dismissing the bill, will be affirmed with costs.