STATE OF TENNESSEE ex rel. J. H. WALLEN et al.,

*v.*

WALLACE S. MILLER, SR.

(*Knoxville,* September Term, 1956.)

Opinion filed June 7, 1957.

DIETZEN, GRAHAM, DIETZEN & BROCK, Chattanooga, for petitioners.

VAN CLEAVE & HATFIELD, Chattanooga, for respondent.

Mʀ. Jᴜsᴛɪᴄᴇ Bᴜʀɴᴇᴛᴛ delivered the opinion of the Court.

The Court of Appeals, in a well reasoned and succinct opinion prepared for that Court by Hale, Judge, has stated the proposition here to be determined as follows:

"The question: May private citizens, without the intervention of the District Attorney, maintain a suit in the nature of *quo warranto* against an allegedly unfaithful public officer to have him removed from office and declared to be ineligible for the same or similar position for ten years and to obtain a recovery for the use of Hamilton County for the amounts wrongfully paid this officer?"

The Court of Appeals then well analyzes and sets forth the pleadings and necessary facts thus:

"On October 15th, 1954, J. H. Wallen and six others as 'bona fide residents, citizens and taxpayers of Hamilton County', filed suit against Wallace S. Miller, Sr., alleging that he was a member and chairman of the Board of Education of said County, and, as such, had personally purchased school busses which he had placed in the names of others and then as a member

of the Board of Education had contracted with these alleged owners; that he was the real party in interest and that in so contracting he violated the provisions of T.C.A. secs. 12-401 and 402, viz.:

" '12-401. Personal interest of officers prohibited.— It shall not be lawful for any officer, committeeman, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend, any work or any contract in which any municipal corporation, county, or the state, shall or may be interested, to be directly or indirectly interested in any such contract.'

" '12-402. Penalty for unlawful interest.—Should any person, acting as such officer, committeeman, director, or other person referred to in sec. 12-401, be or become directly or indirectly interested in any such contract, he shall forfeit all pay and compensation therefor. Such officer shall be dismissed from such office he then occupies, and be ineligible for the same or a similar position for ten (10) years.' "

"The bill prayed for a recovery for the use and benefit of Hamilton County of the amounts unlawfully paid Mr. Miller for the use of these busses, and that he be dismissed from office and held to be ineligible to occupy the same for the next ten years. * * *

"Defendant moved to dismiss the bill because it was not filed in the name of the State or by and with the consent of the District Attorney.

"Thereafter and on January 7th, 1955, Judge Ballard put down a memo opinion in which he held that

the action was neither a *Quo Warranto* action (requiring the signature of the District Attorney), nor was it a proceeding under the Ouster Law, T.C.A. sec 8-2701 et seq., in that there were only seven relators instead of the ten required. Complainants were given twenty days in which to elect as to the procedure to be followed."

The complainants then moved to and were allowed to amend their pleadings so as to name some thirty other citizens as relators. The complainants though still relied upon, as the basis of their action, the defendant's violation of Sections 12-401, and 402, T.C.A., above quoted.

"Defendant, conceiving that this amendment simply made the action one under the Ouster Law by adding the sufficient number of relators, then moved to strike that portion of the complaint relating to recovery of amounts allegedly unlawfully received, insisting that such recoveries could not be had under the Ouster Law. This motion was overruled and defendant unsuccessfully prayed for an appeal. He then answered, denying that he owned the busses in question, and insisting that this action was brought by certain elements of said Bus Drivers' Local Union 838 in an effort to intimidate the Board of Education and require them to pay the union drivers higher wages.

"A long and heated jury trial resulted in a verdict that Mr. Miller was guilty as to 'old' bus 35 and 'new' bus 35; that for the use of these busses he had received $2,480.00, and upon this it was decreed that he be 'dismissed and ousted from the office as a member and

Chairman of the Board of Education of Hamilton County and ineligible to hold the same or similar position for ten years', and 'That petitioner for the use and benefit of Hamilton County, Tennessee, have and recover of the defendant the sum of $2,480.00, when collected shall be subjected to a lien in favor of Dietzen, Graham, Dietzen and Brock, petitioners' attorneys of record, to secure a reasonable fee for services rendered herein.' "

The Court of Appeals concluded that the answer to the question was "that the only relief that relators might have obtained (due to their failure to obtain the joinder of the District Attorney) would have been under the Ouster Law, * * *".

Due to the fact that the procedure for the enforcement of Sections 12-401 and 402, T.C.A., are not prescribed by statute and have not been directly determined in this State, we granted *certiorari*. Arguments have been heard, briefs filed and we now have the matter for determination. Frankly we have spent something near a week in reading various cases in this State and from over the United States on the question.

This Court and the Court of Appeals have had this Statute before it under various circumstances. It was held enforceable by indictment under the common law, *State ex rel. v. Ward,* 163 Tenn. 265, 43 S.W.2d 217; an offending official was refused recovery for services rendered or merchandise sold in violation of the statute; *Madison County v. Alexander,* 116 Tenn. 685, 94 S.W. 604; repayment to the city of funds received in violation of the statute by minor officers was enforced; *Savage v.*

*Mynatt,* 156 Tenn. 119, 299 S.W. 1043; a member of the County Court was held not to be able to recover from the county for services performed for the county; *Hope v. Hamilton County,* 101 Tenn. 325, 47 S.W. 487; recovery was had from a municipal officer for contracts which he had made in violation of this statute; *Hammon v. Miller,* 13 Tenn.App. 458, and *M. F. Parsley & Co., Inc. v. Cole & Miller,* 1 Tenn.App. 714, it was held that the stockholder of a corporation owning a lumber yard who was also a member of the county court could not lawfully contract with the county for building a school. There are many other cases involving this same statute but in none of them has the question been directly raised as it is here as to the procedure necessary for the enforcement of this statute. In all of the cases so far as we know where the public officer has had an interest in the contract or there has been a suit for recovery back on an invalid contract because of his interest the courts have held unquestionably that the officer could not recover for work done or things furnished under this statute. Probably the latest case on the question is *Crass v. Walls,* 36 Tenn.App. 546, 259 S.W. 2d 670. Annotations on the question will be found in 140 A.L.R. pp. 344, and 583. In this latter annotation a number of cases are cited and the question discussed on the distinction between suits of a public body and suits by a taxpayer and general principles where a recovery is had on a violation of a related statute. There is also a group of cases wherein municipal corporations, counties, townships, etc., recover for violation of a related statute, in actions brought by the cities, counties or townships and also in actions brought by the taxpayers. As we said above though in none of these cases is the question raised of

the procedure. The fact of the matter is that in the Savage case the City of Knoxville was made a party "for conformity".

This Court in *State ex rel. Phillips v. Greer,* 170 Tenn. 529, 98 S.W.2d 79, recognized that there was no procedure prescribed by statute or otherwise for the enforcement of this statute. That case, *State ex rel. Phillips v. Greer,* went off on the proposition that the suit was brought under the Ouster Act and that the court would not apply the statute (12-401, 402, T.C.A.) and that the term of office had expired and consequently the court would not rule on the proposition of whether or not ouster was applicable since it had become moot. In the same volume is the case of *State ex. rel. Lavender v. Bingham,* 170 Tenn. 552, 98 S.W.2d 86.

■ Of course it is fundamental that for the enforcement of a statute of this kind where there is no statute prescribing the procedure that the proceedings should be prosecuted according to the practice under the common law, *Olsen v. Sharpe,* 191 Tenn. 503, 507, 235 S.W.2d 11. This suit is brought insisting that Miller has forfeited his office for an act of misconduct on his part in dealing in these school busses. His wrong was a wrong against the public generally. Under such circumstances it seems to us that this statement is applicable:

"Public wrongs or neglect or breach of public duty cannot be redressed at a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury in common with the public generally, even, it seems, though his loss be greater in

degree, unless such right of action is given by statute. * * * In cases of purely public concern and in actions for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is as a general rule by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf, or by some of those local agencies created by the state for the arrangement of such of the local affairs of the community as may be intrusted to them by law. * * *

"In the enforcement of matters of public interest it is generally recognized that the attorney general appearing as a public officer is a proper party to maintain litigation." 39 Am.Jur., p. 863, Sec. 11.
In a proceeding of the kind it is well said that:

"In the absence of constitutional or statutory regulations providing otherwise, *quo warranto* proceedings are the only proper remedy in cases in which they are available." 74 C.J.S. *Quo Warranto,* sec. 4, p. 179; *State ex rel. Bryant v. Maxwell,* 189 Tenn. 187, 224 S.W.2d 833.

What is *quo warranto?*

"In its broadest sense, *quo warranto* is a writ of inquiry as to the warrant for doing the acts of which complaint is made. It is the remedy or proceeding by which the sovereign or state determines the legality of a claim which a party asserts the use or exercise of an office or franchise and ousts the holder from its enjoyment, if the claim is not well founded, or if the right to enjoy the privilege has been forfeited or lost." 44 Am.Jur., p. 88, Sec. 2.

■ *Quo warranto* is a common law remedy.

The Supreme Court of the United States speaking through Mr. Justice Lamar in *Newman v. U. S.*, 238 U.S. 537, 35 S.Ct. 881, 883, 59 L.Ed. 1464, has well stated the reason of why actions of the kind here should and must be brought by *quo warranto,* in the absence of a statute authorizing other procedure. In this opinion it is said:

"In a sense—in a very important sense—every citizen and every taxpayer is interested in the enforcement of law, in the administration of law, and in having only qualified officers execute the law. But that general interest is not a private but a public interest. Being such, it is to be represented by the Attorney General or the district attorney, who are expected by themselves or those they authorize to institute *quo warranto* proceedings against usurpers in the same way that they are expected to institute proceedings against any other violator of the law. That general public interest is not sufficient to authorize a private citizen to institute such proceedings; for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings, and a public officer might, from the beginning to the end of his term, be harassed with proceedings to try his title."

■ It is noted that Sections 12-401, and 402, T.C.A., under which this action is brought, are the first two sections under the Chapter of Public Contracts. The following section, 12-403, T.C.A., declares it unlawful for any state official to do certain acts, and then immediately following this section is 12-404 which provides a penalty

for the violation of Section 12-403, T.C.A. The penalty makes the person guilty of violation of that section guilty of a felony. We refer to these two sections because of their relationship to the section of the Code here involved. Here a civil remedy, that of *quo warranto,* is the only one that is available in view of the fact that the legislators did not see fit to provide any additional procedure for their enforcement.

In Tennessee we have statutory provisions defining the use of *quo warranto* and indicating in what cases and upon what grounds it will lie, these are covered by Sections 23-2801 to 23-2821, T.C.A., inclusive.

Section 23-2801, subsection 2, thereof, provides that when "any public officer has done, or suffered to be done, any act which works a forfeiture of his office" *quo warranto* will lie.

■■ The power to institute such proceedings is conferred by Sections 23-2809 and 23-2810, T.C.A. Section 23-2809 provides that the suit shall be brought by the Attorney General for the district, etc., while Section 23-2810, T.C.A., provides that the suit may be brought "on the information of any person" under certain provisions and qualifications. Under this Section, 23-2810, T.C.A., by an individual on relation, the bill or suit will not lie unless it is in the name of the district attorney general. *State v. McConnell,* 71 Tenn. 332. In subsequent cases involving the question the Court has strictly adhered to this principle so well reasoned out in the McConnell case, that is, to the principle that even when a suit is brought on relation of individuals it must be in the name of the Attorney General. In such an action the district

attorney general has the option, if he concludes that the suit is improperly brought, to dismiss the action and the relators who sign the complaint on their relation are liable for the cost of the action as provided in the section of the Code last referred to. These relators assume that liability and the peril of being taxed with the cost any time that they bring a suit if the Attorney General deems the suit is improperly brought. *State, ex rel. v. Red River Turnpike Co.,* 112 Tenn. 615, 79 S.W. 798; *State, ex rel. Warner v. Agee,* 105 Tenn. 588, 59 S.W. 340; *State, ex rel. Hardwick v. Vest,* 136 Tenn. 167, 188 S.W. 1143.

On this feature of the case this Court speaking through the late Mr. Justice Cook in *State ex rel. v. Ward, supra,* [163 Tenn. 265, 43 S.W.2d 218] said:

"Section 3 of the Ouster Act authorizes ten freeholders to institute the proceeding and that requirement was met in this case. The proceeding in the nature of *quo warranto* may be by information, but if by information it can only be presented by consent of the district attorney general and at all stages of the proceeding is subject to his control." Citing authorities above referred to.

It is argued in the present action that we should likewise consider the matter under the Ouster Act which is Chapter 11 of the Acts of 1915 and is incorporated in T.C.A. secs. 8-2701 through 8-2726. The basic act on which the present suit was brought, as set forth at the outset of this opinion, was passed by the Legislature in the Session of 1869 and 1870 and it has been on the books for lo these many years. The Ouster Act was not passed until 1915. Are violations of Sections 12-401 and 12-

402, T.C.A., grounds for ouster under the 1915 Act? This Court has answered the question in an opinion by the late Mr. Justice Cook, in *State ex rel. v. Perkinson,* 159 Tenn. 442, 19 S.W.2d 254, 255, where it is said:

"By a uniform line of decisions, contracts in violation of the statute have been declared void. This is true though the official contracted in good faith. But where the act is invoked as basis for ouster under chapter 11, Acts of 1915, a distinction must be drawn between the acts done in good faith but unenforcible because the statute makes them so, and acts of willful misconduct, as where a public officer corruptly and fraudulently abuses his powers in making the contract. In the first instance, the contract could not be enforced. In the latter, the officer may be indicted for official corruption (22 R.C.L., 488; *State v. West,* 14 Lea, 39) and removed from office under the Ouster Law. The remedies are concurrent."

"The Ouster Act is remedial only and provides an additional and cumulative remedy." *State ex rel v. Ward, supra.*

When we compare Section 23-2810, T.C.A., the *quo warranto* procedure with Section 8-2710, of the Ouster Act, we see how the Legislature has prescribed the different method of procedure. In the *quo warranto* section the Attorney General must join with the relators while in the Ouster Act it is expressly provided that the relators (10) may bring the action "without the concurrence of any of said officers * * *".

The pleadings and the proof required under the two acts, that is the Ouster Act and the Act under which

this suit is brought (12-401, 12-402, T.C.A.) as will be noted by reference to *State ex rel. v. Perkinson, supra,* and *State ex rel. v. Ward, supra; Vandergriff v. State ex rel.,* 185 Tenn. 386, 206 S.W.2d 395; *State ex rel. Phillips v. Greer, supra,* is different. In as much as the complainants undertook to proceed under the statute, 12-401, 12-402, T.C.A., their remedy is governed by its provisions. Even if we considered the amendment making more than ten relators parties complainant that this suit had been instituted under the Ouster Law then the question now has become moot because the term of office of Miller has expired. For the reasons herein expressed the opinion of the Court of Appeals is affirmed.