COUNTRY CLUBS, INC., and CARL E. HUSKEY

*v.*

CITY OF KNOXVILLE, LEONARD R. ROGERS, and
W. H. PETERS, JR.

395 S.W.2d 789.

(*Knoxville*, September Term, 1965.)

Opinion filed November 3, 1965.

W. E. BADGETT, Knoxville, for appellants.

JONATHAN H. BURNETT, Knoxville, for City and W. H. Peters, FRANTZ, MCCONNELL & SEYMOUR, and ROBERT L. CROSSLEY, Knoxville, of counsel.

S. FRANK FOWLER, Knoxville, for Leonard R. Rogers.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This suit was filed by the appellants against the appellees primarily for the purpose of seeking a declaratory judgment. The suit challenges the right of the defendant, Rogers, to act as Mayor of the City of Knoxville and seeks to have this office declared vacant and to have Rogers declared not to have qualified as the elected Mayor of the City of Knoxville because he failed to comply with Section 92 of the Charter of the City of Knoxville. This Section provides:

*"Sec. 92. Publication of campaign and election expenses and contributions.*

Every candidate for an elective office, and every elective officer of the City of Knoxville, shall, the day before election, and within three days after election, file with the recorder, and publish at least once in a daily newspaper of daily circulation, his sworn statement of all of his campaign and election expenses, itemized, and by whom such funds were contributed; and any candidate for an elective office, and any elective officer, failing to comply with the requirements of this act shall be disqualified from holding the office he seeks, or to which he has been elected."

The bill is filed by the appellants as taxpayers of the City of Knoxville, and by the appellant, Huskey, as a citizen, resident, taxpayer and voter seeking to have his dismissal as an Inspector for the City of Knoxville by the appellee, Rogers, set aside because the appellee, Rogers, acted unlawfully and illegally in dismissing the appellant, Huskey, from his office. The bill then makes the defendant, Peters, and the City parties, asking that they be enjoined from paying out any money or doing any acts whatsoever ordered by the appellee, Rogers, and asked likewise that any salaries paid to Rogers be re-

stored to the City and that Huskey be restored to his office because he had been illegally and unlawfully dismissed from his office. The defendant, Peters, was made a party because he was the Director of Finance of the City.

To this bill, so far as here pertinent, a motion was made to dismiss on various and sundry grounds. The Chancellor sustained the third and fourth grounds of said motion, which are to the effect that the suit was in the nature of a *quo warranto* proceeding, and, not having been brought by the District Attorney General or one authorized for him in the name of the State of Tennessee, could not be maintained; and that the Declaratory Judgment Act, T.C.A. sec. 23-1101, does not authorize the filing and maintenance of a suit of the kind. To this action of the Chancellor the appellants duly excepted and prayed an appeal to this Court. This appeal has been seasonably perfected, able briefs filed and arguments heard. After carefully reading all authorities, the briefs, making an independent investigation of the authorities, and, after considerable thought, we are now in a position to give an opinion in the matter.

The bill alleges, and is supported by a number of exhibits, that the appellee, Rogers, failed in many particulars to comply with Section 92 of the Charter, above quoted. After carefully studying the matter, we must conclude that the gravamen of these charges is that Rogers was a usurper of said office and not entitled to exercise its powers or perform its duties. This bill is not brought in the name of the State of Tennessee nor instituted by the District Attorney General.

The law upon which the Chancellor dismissed the bill is contained in T.C.A. sec. 23-2801, which provides in effect that an action lies in the name of the State against

a person offending in a number of cases and particularly applicable herein is subsection (1) of the Act, to-wit:

"Whenever any person unlawfully holds or exercises any public office or, franchise within this state, * * *."

T.C.A. sec. 23-2809 provides that a suit brought under T.C.A. sec. 23-2801 must be brought in the name of the State by the District Attorney General. If it is not so brought, it must be dismissed. *State v. McConnell,* 71 Tenn. 332. The purpose of this requirement is to "subserve the public interest", *State v. McConnell, supra,* since such a suit is regarded as that of the State.

This Court in *Jones v. Talley,* 190 Tenn. 471, 475, 230 S.W.2d 968, in commenting on Code Sections, above referred to, said this:

"Such being the mandate of Code, sec. 9339 (T.C.A. sec. 23-2809) and the public policy reason for its enactment as declared by the decisions, it follows that whenever a suit is brought to procure an adjudication that a defendant is unlawfully holding and exercising the duties and powers of a public office, and it appears from the face of the bill that the suit is not instituted in the name of the State by the District Attorney General, then it is the duty of the Court to dismiss the bill without considering the merits of whatever the insistences are in that bill."

Subsequent to the opinion of this Court in *Jones v. Talley, supra,* this Court had the duty to again consider a *quo warranto* and the statutes here in question in relation to T.C.A. sec. 23-2801 in the case of *State ex rel. Wallen v. Miller,* 202 Tenn. 498, 304 S.W.2d 654. In that case we asked the question:

"What is *quo warranto?*

" 'In its broadest sense, *quo warranto* is a writ of inquiry as to the warrant for doing the acts of which complaint is made. It is the remedy or proceeding by which the sovereign or state determines the legality of a claim which a party asserts the use or exercise of an office or franchise and ousts the holder from its enjoyment, if the claim is not well founded, or if the right to enjoy the privilege has been forfeited or lost.' 44 Am.Jur., p. 88, Sec. 2."

And then we went on to say:

"The Supreme Court of the United States speaking through Mr. Justice Lamar in *Newman v. U.S.,* 238 U.S. 537, 35 S.Ct. 881, 883, 59 L.Ed. 1464, has well stated the reason of why actions of the kind here should and must be brought by *quo warranto,* in the absence of a statute authorizing other procedure. In this opinion it is said:

" 'In a sense—in a very important sense—every citizen and every taxpayer is interested in the enforcement of law, in the administration of law, and in having only qualified officers execute the law. But that general interest is not a private but a public interest. Being such, it is to be represented by the Attorney General or the district attorney, who are expected by themselves or those they authorize to institute *quo warranto* proceedings against usurpers in the same way that they are expected to institute proceedings against any other violator of the law. That general public interest is not sufficient to authorize a private citizen to institute such proceedings; for if it was, then every citizen and every taxpayer would have the same interest and the same right to institute such proceedings, and a public

officer might, from the beginning to the end of his term, be harassed with proceedings to try his title.' "

In that case we used this quotation from an opinion of the Supreme Court of the United States, rendered many, many years ago, because we felt that this expression better stated the reasons why *quo warranto* is necessary than we could state. This reasoning has been followed by practically every state in the Union one way or another when it was applicable under situations such as here presented. We see no reason now to change the logic of this reasoning because to our mind it is inescapable.

The reason for such a holding, as applied under our statutes, T.C.A. sec, 23-2801 to sec. 23-2821, was first clearly enunciated by this Court in the December term of 1879 in *State v. McConnell,* supra. This Court has consistently adhered to this principle, which was so well reasoned in the McConnell case, and it is the same well founded principle in our jurisprudence today. In the McConnell case, it was said, "Upon demurrer, assigning as one of its causes that a bill to remove a public officer on relation of a citizen, would only lie in name of the Attorney General, the Chancellor dismissed the bill and the relator appealed." This ruling of the Chancellor was affirmed. The Court in its opinion referred to and quoted from the very same statute, which was in the Code of 1858, and has come down to this day as the sections above referred to, and there clearly applied the statutes as the means for protesting the powers of a claimed usurper in office.

It is argued very forcibly that the case now before us is identical to that of *Heiskell v. Lowe,* 126 Tenn. 475, 153 S.W. 284, in that in the Heiskell case Section 30 of Chapter 498 of the Private Acts of 1911 was relied on,

and this Section is identical to Section 92 of the Act here relied on. Counsel has Shepardized this case from the time it was written, some fifty odd years ago, to the present time and correctly says that insofar as it holds it has never been overruled or distinguished. It has been cited numerous times in various and sundry sound legal statements, and we can find nothing on which to criticize the Heiskell case, but feel under good authority that it is not in point in the present litigation, because the Heiskell case was an election contest, as said by Mr. Justice Shields in the outset of his dissenting opinion:

"It is not controverted that this case presents an election contest, of which the circuit court of Knox county had jurisdiction, and which the petitioner, J. L. Lowe, as a citizen, voter, and taxpayer of the municipality of Knoxville, had the right to bring and maintain, provided his contention was supported by the facts, which are not controverted; the case being before us upon petition and demurrer, and sound in law."

The present action is not an election contest, because if it were it could not be maintained in the Chancery Court where it was brought, but would have had to be brought under our jurisprudence in the law court. This question has been ruled on in this Court on many occasions, and particularly in *Hogan v. Hamilton County,* 132 Tenn. 554, 179 S.W. 128, wherein this Court held that the Chancery Court had no jurisdiction of a bill brought to contest an election, of one receiving the highest votes on the ground of ineligibility, or to declare the election void. In the Hogan case, the opinion there referred to another opinion prepared for this Court by Mr. Special Justice Frantz holding to the same effect that a Chancery Court did not have jurisdiction in an election contest. Mr.

Special Justice Frantz was one of counsel in the Heiskell case, supra. As we see it, in the Heiskell case the question of whether *quo warranto* was applicable was entirely pretermitted.

T.C.A. sec. 23-2808, the Chapter involving *quo warranto,* provides that the validity of an election contest cannot be tested under the *quo warranto* section. This Court held the same thing in *State v. McConnell,* supra. In the McConnell case, when speaking of *quo warranto* and contested elections, the Court said:

"It has been held that the two classes of cases are entirely distinct. A contested election, this court has said, is not a case to which the State is a party, nor is it the duty of the district Attorney General to attend. The contest is, it is added, not analogous to a bill in the nature of a writ of *quo warranto* and it can not be tried under the provisions of the Code, sections 3409 and 3423. *Boring v. Griffith,* 1 Heis., (48 Tenn.) 456."

Thus, for this reason, as we see it, this case is entirely different from the Heiskell case because it is brought in the Chancery Court, and an election contest cannot be brought in a Chancery Court, and, since it is brought in the Chancery Court, we cannot consider it as an election contest. Thus it is that the *quo warranto* proceeding, hereinbefore quoted and referred to, applies. In *State v. McConnell,* supra, this was said:

"It is true the act of 1846 (the Act setting out the various *quo warranto* sections of the statute referred to) does not undertake to provide a remedy for the usurpation and forfeiture of public office. But the remedy provided by the Code is precisely the same for all classes of cases enumerated. If the Attorney General

is a necessary party to a suit, 'by bill in equity,' on information touching a corporation, he is equally necessary where the suit relates to the usurpation of a public office.''

 The suit of the appellant, Huskey, based upon allegations of special injury caused by his illegal discharge from his position as an employee of the City of Knoxville, cannot be maintained because under the allegations of the bill the appellee, Rogers, was acting at least as *de facto* Mayor in anything that he had to do as to this discharge, and his action thus was legal. The bill avers that since the date he took office he had performed ''numerous and sundry acts of an executive and legislative character in the capacity of Mayor * * * too numerous to set forth herein.'' A number of acts that he did are set forth. What is a *de facto* officer has been before this Court numerous times under various and sundry factual situations. It is enough to say though that when a person is occupying a public office and performs the duties of this office he is a ''*de facto* officer'' even though he may not have legally been appointed or elected to the office where he holds an apparent right under color of title. The bill shows here that Rogers did receive the majority of votes and was then sworn in as Mayor, but the basis of attacking him as a usurper in this office is that he failed to comply with Section 92 of the Charter in setting forth the various and sundry things that this section requires.

 The law validates the acts of ''*de facto*'' officers as to the public and third persons on the ground, though not officers *de jure,* they are in fact officers whose acts, public policy requires, should be considered valid. In our judgment there can be no escape from the facts alleged in this

bill that Rogers was at the time he discharged Huskey at the very least a *de facto* officer. For some of the cases defining *de facto* officers, and defining the term in various ways, see *Ridout v. State,* 161 Tenn. 248, 30 S.W.2d 255, 71 A.L.R. 830; *Evers v. Hollman,* 196 Tenn. 364, 268 S.W. 2d 97; *Smith v. Landsden,* 212 Tenn. 543, 370 S.W.2d 557; and *Kidd v. McCanless,* 200 Tenn. 273, 292 S.W.2d 40. There are many, many more, and a number of such cases are cited in the cases here cited.

▋ Should we consider this action merely as one brought under the Declaratory Judgment Act, T.C.A. sec. 23-1101, et seq., it does not dispense with the requirement that a suit in the nature of a *quo warranto,* which this is, must be brought in the name of the State by the District Attorney General. This proposition has been decided by this Court on various occasions, and particularly it was so stated in *Jones v. Talley,* supra; *State ex rel. Wallen v. Miller,* supra; *Skelton v. Barnett,* 190 Tenn. 70, 227 S.W.2d 774; *Jared v. Fitzgerald,* 183 Tenn. 682, 195 S.W. 2d 1; and *Coleman v. Henry,* 184 Tenn. 550, 201 S.W.2d 686.

This suit is brought by the appellants as taxpayers of Knoxville, but we can find nothing whatsoever in the allegations of this carefully drawn bill which alleges that the appellants have or will suffer any special injury, or will be affected in any manner, which is not common to every other citizen of the City of Knoville. Such being the situation the suit must fail for this reason. *Coleman v. Henry,* supra; *Walldorf v. City of Chattanooga,* 192 Tenn. 86, 237 S.W.2d 939; *Skelton v. Barnett,* supra; and many others that could be referred to.

The motion which was sustained by the Chancellor does not make any question as to the sufficiency of the causes

of this contest, but it is merely to the jurisdiction of the court, and as to the manner of instituting the proceedings. The decree of the Chancellor must be affirmed and the bill will not be considered on its alleged merits because it was not instituted in the name of the State by the District Attorney General. The suit is dismissed at the cost of the appellants.