City of Rockwood et al.

*v.*

Chamberlain Memorial Hospital et al.

427 S.W.2d 829.

(*Knoxville,* September Term, 1967.)

Opinion filed April 15, 1968.

C. Howard Bozeman, Knoxville, for appellants; Stone & Bozeman, Knoxville, of counsel.

J. Polk Cooley and Edgar R. Bowers, Rockwood, for appellees.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

This suit was filed, as specifically stated in the first paragraph of the petition, for a declaratory judgment under Title 23, Chapter 2, T.C.A. The petition then sets forth in great detail exactly what it wishes to be declared. We have read this bill a number of times, and, after doing so and thinking about the matter, we are now satisfied with our construction of it and the conclusion we have reached.

The obvious purpose of the bill is to determine whether or not the City of Rockwood and its Board of Mayor and Commissioners have the duty, either legal or by long action, to participate in the operation of the Chamberlain Memorial Hospital, the appellee, and it is for the determination of this question that the suit was instituted.

It is alleged in the bill that the City was duly incorporated in 1903 and its charter has been subsequently amended; that it is operated by a Mayor and two Commissioners, and the present ones are named.

The appellee hospital is located in this City and was created by the fathers of the City of Rockwood on March 9, 1917, when the City set aside a block in that City for the purpose of erecting this hospital and authorized this block of land to be conveyed to the Trustees of the hospital, hereinafter to be referred to; that as a result of agreeing to do this on July 11, 1917, an application was filed with the Secretary of State for a charter of incorporation under Chapter 123 of the Acts of 1889, which is for a private charter of incorporation and not a public welfare corporation; that at the time of this incorporation the charter required a five member board of directors who were Mr. Fred Haggard, who drew up the charter, and a young lawyer in his office, plus an outstanding doctor of Rockwood, the general manager of the Roane Iron Company and the then Mayor of Rockwood, Mr. Polk Tarwater. The last three gentlemen constituted the Board of Trustees of this hospital and subsequently the property, block 53, was duly deeded to this hospital. Shortly thereafter, that is within ten days after receiving the charter, these five incorporators adopted a constitution. This constitution provided for three named Trustees, that is one person representing the Roane Iron Company, another, the noted physician, representing the heirs of Captain H. S. Chamberlain, and Mr. Tarwater representing the City of Rockwood. Under the terms of this constitution these three Trustees were given the power of a board of directors and insofar as this bill shows the other two who were named in the charter did not have anything else to do with it. No five member board was ever elected by the stockholders and so far as the allegations here are concerned the stockholders were apparently non-existent as required under the terms of the charter.

Some fifteen years later, that is, in July, 1930, the City of Rockwood through its Mayor and Commissioners authorized and executed a Quit Claim deed to the Memorial Hospital for this block 53. At the time of the execution of this deed the three original Trustees were still operating the hospital as provided by Article III of the Constitution. This Article provides:

"Control. The absolute control and management, in every detail of the corporation is vested in E. O. Wells, Dr. J. C. Wilson and Polk Tarwater, as Trustees, three of its incorporators, who shall constitute and be known as the Board of Trustees, and who shall act and serve as such Trustees for and during their respective lives, or until their offices shall be vacated,—a. Upon resignation;—b. Upon removal from the City of Rockwood, Tennessee.

"1.—In the event of a vacancy in the office of E. O. Wells, Trustee, as herein provided, his successor as Trustee, shall be elected, appointed or named by the Roane Iron Company, a corporation, its successor or successors.

"2.—In the event of a vacancy in the office of Dr. J. C. Wilson, Trustee, as herein provided, his successor shall be elected, appointed, or named by the then living heirs or nearest blood relatives of Capt. H. C. Chamberlain, deceased.

"3.—In the event of a vacancy in the office of Polk Tarwater, Trustee, as herein provided, his successors as Trustee, shall be elected, appointed, or named by the Board of Aldermen of the City of Rockwood, Tennessee.

"Upon the death, resignation or removal of any successor or successors in trust of the said E. O. Wells, Dr. J. C. Wilson and Polk Tarwater, their respective successor or successors in trust shall at all times be elected named or appointed in like manner as is herein provided for the election, naming or appointing of successor or successors of the said E. O. Wells, Dr. J. C. Wilson, and Polk Tarwater."

The bill then went on to show who succeeded [in the directions of the above constitution] these various Trustees, when they died or moved and things of the kind, for a period of more than thirty years until 1966, when, it is alleged, there became a vacancy in the trusteeship which had been named all these years by the City, and as a result of this vacancy Mr. John H. Albertson, Jr., of Rockwood was named to succeed as the Trustee. The City of Rockwood had appointed a Trustee all these years. It is then alleged that the hospital was contacted and told that Mr. Albertson had been appointed and asked when he was to come to meetings, etc., such as a new Trustee would do, and as a result of this letter to the hospital the City received a letter from the hospital stating there was no longer any vacancy among the Trustees; that the constitution had been changed. In other words, though they did not say so in so many words, the door was now closed on the City and it no longer had any right to name a Trustee. This, of course, was done in a reasonable manner by asking the legal representatives of each side to contact each other about it.

The hospital used this language in their letter: " * * * since Chamberlain Memorial Hospital is a private corporation, there is some question as to the legality or necessity of distributing such information. However,

we do invite you to have your attorney contact * * * the hospital attorneys for any questions or information that might be pertinent''. Thus it was that the door was closed, and as a result thereof the present litigation was instituted.

The City takes the position that due to what has transpired, as briefly related hereinabove, that it is in a position of a cestui que trust for some reason or other and as such, having had a Trustee on this board for a period of over thirty years, it is the City's duty to name one of these Trustees on this governing board. In other words the City says it is its duty to do this. Thus it was the City filed this suit to determine just what is its duty under the circumstances. Apparently, from a careful study of the bill, if it is determined that the City no longer had any duty the lawsuit would end, but based on the facts as above alleged as to what has been done since this hospital was organized it was for the City as it was for the heirs of Captain Chamberlain and the president of Roane Iron Company and his successor in some way to become a cestui que trust and it had this duty to perform. The purpose of this bill, it seems to us, as filed by the City, is to see what its obligation is, and the only way it has to determine this is to find out what has happened and what has been going on since the City appointed their last Trustee.

It is true that it is alleged in the bill that another Trustee has moved away and his place has become vacant under this original constitution, but all of these things are neither here nor there when we come to the major contention of this bill, and that is to determine whether or not the City of Rockwood is a cestui que trust. What is its position in view of these things that have happened

over the years and whether or not it still has an obligation to have someone on this Board of Trustees to look after and run this hospital for the citizens of Rockwood? By a very thoughtful reading of this bill one reaches no other conclusion.

The bill was demurred to on various grounds but the Chancellor sustained one ground alone, that is, "that the allegations of the bill and the relief sought by the bill are based upon alleged acts which fall within the purview of T.C.A. Secs. 23-2801 and 23-2802 for which the exclusive remedy would be a Quo Warranto proceedings" * * * so that, "It must be brought in the name of the State of Tennessee by the District Attorney General".

The corporate capacity of the appellee hospital is not attacked or brought into question, though there are certain references made to the effect that they have not incorporated under certain Sections of the Code; that they don't know what they have done under the act they were incorporated under and things like that. The whole thrust of this litigation is not to tear up or disrupt the hospital and its corporate being but to determine and find out what are the duties and obligations of a cestui que trust who has exercised such duties over a period of more than thirty years. This suit, too, is not brought by just any ordinary citizen of Rockwood or Roane County, who might be interested in it, but it is brought by the City who clearly shows under the bill herein a very definite interest and obligation to find out exactly what its duties are under the circumstances. The City would like to know, in view of what has gone on since the City gave the hospital this property and a representative of the City acting as one of the Trustees along with the

heirs of Chamberlain and a representative of the big industry of the City, what is its obligation.

■ It seems that clearly such can be arrived at without saying that the bill is filed under our Quo Warranto statutory proceedings as contained in sec. 23-2801 et seq., T.C.A., which Chapter of the Code is headed "Usurpation of Office or Franchise—Vacation of Charter". When we come to sec. 23-2802, T.C.A., it has reference to an action against corporate officers, trustees, etc., who have management of public funds for charitable purposes, etc., which at first blush would indicate that this action should be a Quo Warranto action, but upon careful thought and study of the bill it seems to us what is sought is not what you would get if you had the District Attorney General as a party to the suit in a Quo Warranto proceeding and it was not necessary to have him bring such an action here. A number of times over the years we have attempted to show by various decisions "what is Quo Warranto?" And we have used a statement of Mr. Justice Lamar, Supreme Court of the United States, on the reason why Quo Warranto is used, which can be found in one of our latest opinions, that of *Country Clubs, Inc., et al. v. City of Knoxville,* 217 Tenn. 104, 395 S.W.2d 789. We will not again quote this but those interested in this question may again read this opinion.

An action in Quo Warranto against the hospital would not settle the issues here sought to be determined one way or the other and would certainly be entirely improper for the City as one claiming to be a part of the make-up and control of the hospital to bring such a suit and question the capacity in which it is acting. The City here has a far greater interest than anyone of the general public would have, because it has certain elected officials

476

who have to carry out this trust and over the years part of the trust has been to see that one of these Trustees was appointed by the City.

We think that under the rule as laid down in *Morrison v. Crews,* 192 Tenn. 20, 237 S.W.2d 1, that when there is an extraordinary proposition and when a person has an extraordinary interest in a matter like this, far greater than a citizen would have, then he has a standing which endows him with a right to find out what his duties are under such circumstances. In doing so, he is not attacking the corporation but he is just trying to find out what his duties are.

This statement quoted in the appellant's brief is applicable to the situation here. It is said: "Matters dealing with the rights and status of Corporations and/or stockholders, and the relation between the one and the other, have frequently been the subject matter of actions for declaratory judgments." 21 A.L.R. 87; 19 A.L.R. 1135, 68 A.L.R. 130; 87 A.L.R. 1236. We think that is what is sought here, that is, the status of the City in this corporation, not trying to bore in or tear up the hospital or anything of the kind but trying to see what its duty is, and clearly when there is an effort sought to get relief from uncertainty and insecurity with respect to right, status and all legal relations under the declaratory judgment statutes the court should take jurisdiction and act. *Shelby County Board of Commissioners v. Shelby County Quarterly Court,* 216 Tenn. 470, 392 S.W.2d 935, 936.

Thus it is, after fully setting forth how this hospital was originally created and organized, the City now calls upon the hospital for certain discoveries, such as books

and records, which according to the City reflect the true relationship between the City and the hospital and its present Trustees, if the hospital and Trustees differ from the position of the City as hereinabove set forth.

The City very frankly, succinctly and simply states in its brief that: ''The Complainants do not attack the corporate capacity of the Defendant-Hospital nor do they question the status, title and/or capacity of the Officers thereof except in so far as the type of business entity would be determinative in establishing the relationship of the Complainants with the Defendant-Hospital; i. e. stockholder, member or joint owner. (Tr. p. 12, Sec. 2[f]) The Complainant-City of Rockwood through its Board of Mayor and Commissioners does claim to be stockholders, members and/or joint owners with the obligation and authority to participate in the selection of management as set out hereinabove.''

We think as we read the brief herein that this paragraph from the brief effectually sets forth the purpose of this bill. This being true, there is no attack upon the corporate existence and/or such an attack as should be brought by the District Attorney General in his official capacity as he is expected to do in proceedings against a violator of the law. As we see it, T.C.A. sec. 23-2801 et seq., setting forth a mandate under Quo Warranto is not controlling herein, and the suit may be brought as it was under the declaratory judgment act, T.C.A. sec. 23-1101 et seq. This being true, we must remand the case to the Chancery Court where future proceedings will be governed in accordance with this opinion. The suit is thus reversed and remanded and the costs assessed against the defendants.

## Opinion on Petition to Rehear

The Hospital has filed herein a courteous, dignified and respectful petition to rehear, wherein it is prayed that in our opinion heretofore rendered we in effect missed the point. As counsel for the Hospital sees it, the point is that the suit was instituted merely to cause the Hospital Board to name an individual to that Board that had been suggested by the City, and that thus the action was a suit for quo warranto rather than a declaratory judgment action.

Before writing the original opinion herein we read the bill and briefs several times and thought about the matter a good deal, and we feel that unquestionably we arrived at the right conclusion. The Hospital now apparently takes the position that we have based our opinion entirely upon the fact that the City still had to have people on this Board and still had a right to put people on the Board, but a careful reading of our opinion will show that this was not what we were trying to get to at all, but, after reading the record and hearing oral argument, we in effect answered the present petition to rehear when we said in the opinion:

"In other words though they did not say so in so many words, the door was now closed on the City and it no longer had any right to name a Trustee."

In other words the thrust of the whole lawsuit was that the City had been denied the right to name this particular Trustee, and they felt that they would be treated the same way when other subsequent appointments came up, and thus it was the suit was filed to determine under all the circumstances as set out in the

original opinion what the City's rights and duties were in the future.

Unquestionably we think under such a situation this is a proper suit for a declaratory judgment and should be answered and the question determined.

Having carefully considered this petition to rehear, we must overrule the same for the reasons hereinabove set forth.