IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 3, 2005 Session

## CITY OF NEW JOHNSONVILLE v. KEVIN E. HANDLEY, ET AL.
## and
## GENE PLANT, ET AL. v. KEVIN E. HANDLEY, ET AL.

**Direct Appeal from the Chancery Court for Humphreys County**
**Nos. CH-01-179 & CH-01-211    Robert E. Burch, Chancellor**

_____

**No. M2003-00549-COA-R3-CV - Filed August 16, 2005**

_____

This appeal involves protracted litigation over a parcel of land conveyed by the City of New Johnsonville, Tennessee, to a member of the New Johnsonville City Council. The mayor, on behalf of the city, subsequently filed suit against the councilman seeking to nullify the transaction. During the pendency of that litigation, several taxpayers filed their own suit against the councilman alleging the same causes of action set forth in the city's complaint. The city and the councilman ultimately settled their lawsuit. The taxpayers' lawsuit continued, ultimately naming the city as a defendant. The trial court partially granted the defendants' motions for summary judgment by ruling that the taxpayers did not have standing to contest the land transaction between the city and the councilman. The court ruled that the taxpayers did have standing to continue with their other causes of action concerning allegations that the councilman engaged in illegal business transactions with the city. The taxpayers subsequently took a voluntary nonsuit on their remaining claims and filed an appeal to this Court to contest the trial court's grant of summary judgment on their claim regarding the land transaction. We vacate the trial court's decision regarding the land transaction, and we remand for further proceedings not inconsistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and
Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., joined, and HOLLY M. KIRBY, J., concurred separately.

R. Eric Thornton, Dickson, TN, for Appellants

T. Holland McKinnie, City Attorney, Franklin, TN; Michael R. Hill, Milan, TN, for Appellee, City of New Johnsonville, TN

Benjamin C. Regen, Dickson, TN, for Appellees, Kevin E. Handley & Gloria J. Handley

Stephen D. Wakefield, Memphis, TN, for Appellee, E. I. Dupont De Nemours and Company

John Lee Williams, Robert I. Thomason, Jr., Waverly, TN, for Appellee, Volunteer Title Company, Inc., Trustee

Lewis L. Cobb, Jerry P. Spore, J. Brandon McWherter, Jackson, TN, for Appellee, Union Planters Bank

**OPINION**

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This appeal involves protracted litigation between numerous parties concerning the transfer of a parcel of land located in New Johnsonville, Humphreys County, Tennessee. The facts, as set forth in over 2,000 pages of technical record, are largely undisputed.

In 1986, Mr. and Mrs. E. W. Lucas (the "Lucases") conveyed, as a gift, approximately eighty (80) acres of property (the "Lucas Property") located in the City of New Johnsonville ("City") to the City. Although not expressly stated in the deed, the Lucases and the City apparently reached an oral agreement that the City would use the property for industrial development. Specifically, the City agreed to convey the Lucas Property at no cost to entities desiring to engage in industrial and/or commercial development on the Lucas Property for the overall benefit of the City.

The City subsequently created an industrial park on the Lucas Property by conveying several tracts of land to various industries at no cost. In approximately July of 1999, Mayor Lawrence A. Hethcoat ("Mayor Hethcoat")[1] began negotiating with E. I. DuPont de Nemours & Company ("DuPont"), an already existing industry in the City, about locating its new warehouse and distribution facility in the City's industrial park. DuPont expressed its desire to have someone else build the facility on the property which DuPont would, in turn, lease. The City offered to convey a portion of the Lucas Property to an entity selected by DuPont to build the facility.

During the course of the City's negotiations with DuPont, Kevin E. Handley ("Councilman Handley") served as a member of the New Johnsonville City Council ("City Council").[2] Councilman Handley alleged that, in August of 1999, he had a chance meeting with a DuPont employee at a local restaurant. Councilman Handley learned from the employee that DuPont had decided to accept the City's offer. During the course of their conversation, Councilman Handley inquired about bidding

---

[1]Mayor Hethcoat served as Mayor of New Johnsonville from 1988 to 2000.

[2]Councilman Handley took office in September of 1998.

on the construction of the DuPont facility. In September of 1999, DuPont mailed Councilman Handley a "Request for Proposal" form. Councilman Handley completed his bid proposal and submitted it to DuPont. On November 1, 1999, DuPont sent a letter to Councilman Handley notifying him that it had, in essence, selected his bid proposal over the others submitted.

Thereafter, Councilman Handley communicated to Mayor Hethcoat that he had been selected by DuPont to build the facility. Mayor Hethcoat convened a special called meeting of the City Council on November 19, 1999, to discuss conveying a portion of the Lucas Property to Councilman Handley and his wife (along with Councilman Handley, collectively referred to as "the Handleys"). Councilman Handley came to the meeting and informed the other members of the City Council that he had been selected to build the DuPont facility. At the special called meeting, the City Council passed a resolution for the conveyance of 32.657 acres of the Lucas Property to the Handleys. That same day, Mayor Hethcoat, on behalf of the City, executed a "Warranty Deed" conveying 32.657 acres of the Lucas Property in consideration of $1.00 to the Handleys, d/b/a Mid South Logistics.

In the interim, the Handleys secured a loan from Union Planters Bank, N.A. ("Union Planters") in the amount of $5,373,181.69 to construct the DuPont facility.[3] On January 3, 2000, the Lucases conveyed an additional 19.11 acres of property located adjacent to the parcel at issue to the Handleys in consideration of $38,220.00. On January 17, 2000, the Handleys executed a lease agreement with DuPont calling for the construction and subsequent lease of a warehouse. A "Side Letter" executed by the Handleys and DuPont set forth DuPont's specifications and called for the construction of a warehouse 297,5000 square feet in size. Councilman Handley proceeded to build an industrial warehouse partially located on the parcel obtained from the City and partially located on the parcel obtained from the Lucases.

At some point, the citizens of the City elected Mayor Gene Plant ("Mayor Plant") as their new mayor. After the transaction between the City and the Handleys had been concluded, the Comptroller of the Treasury for the State of Tennessee (the "Comptroller") conducted an investigation and audit of the City's records for a period spanning July 1, 1998, through March 31, 2000, "to determine the extent of the [City's] compliance with certain laws and regulations." On December 12, 2000, the Comptroller issued his findings which revealed several problem areas. The first area discussed in the Comptroller's report addressed the transaction between the City and Councilman Handley, providing:

> 1. **FINDING: Apparent conflict of interest**
>
> Two city councilmen had apparent direct conflicts of interest between their official duties and personal interests. The City purchased goods and services

---

[3]Pursuant to its mortgage with the Handleys, Union Planters took a security interest in the Deed of Trust to secure the mortgage. As further security for the mortgage, the Handleys also executed an Assignment of Leases and Rents in favor of Union Planters.

from two councilmen as well as conveying a 32-acre tract of land to one of them. Section 12-4-101(a)(1), *Tennessee Code Annotated*, states:

> It is unlawful for any officer, committee member, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend any work or any contract in which any municipal corporation, county, state, development district, utility district, human resource agency, or other political subdivision created by statute shall or may be interested, to be directly interested in any such contract. "Directly interested" means any contract with the official personally or with any business in which the official is the sole proprietor, a partner, or the person having the controlling interest. . . .

In addition, the New Johnsonville municipal code, Section 4-101, states, "Except for the receipt of such compensation as may be lawfully provided for the performance of his municipal duties, it shall be unlawful for any municipal officer or employee to be privately interested in, or to profit, directly or indirectly, from business dealings with the municipality."

**RECOMMENDATION:**

To provide impartial decisions regarding the city's contracts, official should ensure that unlawful conflicts of interest, as defined in Section 12-4-101, *Tennessee Code Annotated*, are avoided. Business dealings between the officials and the city should be avoided as required by Section 4-101 of the municipal code. The mayor and members of the city council should seek legal advice and take appropriate corrective action.

**MANAGEMENT'S RESPONSE:**

**Mayor Plant and Councilmen C. Dellinger, J. Dellinger, Handley, Harbison,and James:**

We concur. The city will abide and enforce Section 12-4-101, *Tennessee Code Annotated*, and will seek legal advice from the city attorney.

**Former Mayor Hethcoat:**

Failed to respond.

**Councilman Laughlin:**

I concur. Unused land should be returned immediately. An agreement should be negotiated for the land used.

The City's attorney subsequently issued an opinion letter expressing his opinion that the City could not lawfully convey real property to a member of the City Council.

On July 31, 2001, Mayor Plant, acting on behalf of the City, filed a complaint in the Chancery Court of Humphreys County against the Handleys individually; their business, Mid South Logistics; Volunteer Title Company, Inc., the trustee holding title to the property at issue; and Union Planters as mortgagee.[4] The complaint alleged that the transaction between the City and Councilman Handley violated several provisions of the City's municipal code and state law, specifically Section 12-4-101(a)(1) of the Tennessee Code. The City requested that the trial court issue a temporary restraining order against the Handleys to prevent further construction on the subject parcel; enter an order requiring the rental payments under the DuPont lease be paid into the court pending resolution of the matter; an accounting of all profits received in connection with the use of said property; an order requiring the Handleys to turn over to the City all rents or profits received in connection with the use of the property; an order finding the transaction failed for lack of consideration; an order finding the execution of the deed by the City in favor of the Handleys constituted an *ultra vires* act; an order finding the special called meeting a nullity in violation of section 8-44-103(b) of the Tennessee Code; and an order terminating and extinguishing all liens the Handleys placed on the property. Mr. R. Eric Thornton ("Mr.Thornton"), with the law firm Ramsey & Thornton, PLC in Dickson, Tennessee, filed the complaint on behalf of the City.

---

[4]The original complaint filed by the City did not name DuPont as a defendant. The Handleys subsequently filed a motion with the trial court, pursuant to Tennessee Rule of Civil Procedure 12.02(7), seeking to dismiss the action for the City's failure to join an indispensable party. The trial court denied the Handleys' motion and granted the City thirty (30) days to amend its complaint to name DuPont as a defendant.

In August of 2001, several citizens of the City appeared at a special called meeting of the City Council to present a petition signed by numerous citizens asking the City Council to support the lawsuit filed by Mayor Plant. A motion was made at the meeting to support the lawsuit, but the motion failed to pass. On September 4, 2001, several citizens of the City (hereinafter referred to as the "Taxpayers") filed a motion with the trial court asking, pursuant to Rule 20.02 of the Tennessee Rules of Civil Procedure, to join the lawsuit. That same day, the City filed a motion to amend its complaint to allege that the Handleys were trespassers and had vandalized the subject property. The trial court subsequently granted the City's motion. On September 17, 2001, the Taxpayers filed a complaint in the trial court against the Handleys, individually; the Handley's business, Mid South Logistics; Volunteer Title Company, Inc.; Union Planters; and DuPont. Mr. Thornton represented the Taxpayers in this lawsuit as well.[5] The Taxpayers' complaint alleged the same violations and requested the same relief as the complaint filed by the City, particularly a violation of Section 12-4-101(a)(1) of the Tennessee Code. On December 3, 2001, the City filed a motion to amend its complaint once more to add allegations that Councilman Handley, since taking office, had engaged in at least twenty-eight (28) illegal business transactions with the City.

On January 17, 2002, the trial court entered an order on the City's second motion to amend its complaint. In that order, the trial court stated as follows:

> *Came the Plaintiff, City of New Johnsonville,* by and through its attorney, and moved the Court for permission to amend its Complaint to add an additional party, averments and prayers for relief.
>
> The Court upon consideration of said motion . . . is of the opinion that said motion should be granted. *Plaintiff* has sixty (60) days to file a *consolidated complaint* with all amendments and prayers for relief in this cause.

(emphasis added). Thereafter, on January 24, 2002, Mr. Thornton filed an "Amended and Consolidated Complaint" with the trial court which stated as follows: "Come now the Plaintiffs, *pursuant to Court Order* consolidating the actions filed by Plaintiffs, and file this Amended and Consolidated Complaint restating the allegations of the Plaintiffs in one action, consolidated under *Docket Number CH-01-179*." (emphasis added). In the "consolidated" complaint, Mr. Thornton restated the various allegations lodged against the Handleys and other defendants, namely, that the land transaction between Councilman Handley and the City violated city and state laws; that the Handleys were trespassers; that the Handleys had vandalized the property; and that Councilman

---

[5]During the course of this litigation, attempts were made to disqualify Mr. Thornton from representing both the City and the Taxpayers. Despite such efforts, the trial court allowed Mr. Thornton to represent both parties during the course of the proceedings below. Mr. Thornton is now representing the Taxpayers as the Appellants on appeal.

Handley had engaged in at least twenty-eight (28) illegal business transactions with the City since taking office.[6]

On September 9, 2002, Mayor Carolyn Ingram ("Mayor Ingram") took office as the City's newly elected mayor. On the same day that Mayor Ingram took office, Councilman Handley's term of office apparently ended. Additionally, Mayor Ingram, on the same day she took office, issued a letter to Mr. Thornton terminating his representation of the City in this matter. Also on September 9, 2002, the Handleys tendered a settlement offer to the City. The settlement offer called for the City to dismiss with prejudice all claims filed in its lawsuit against the Handleys and other defendants. In turn, the Handleys agreed to dismiss all of their counterclaims filed in the case. In addition, the agreement called for the City to execute a quitclaim deed in favor of the Handleys re-conveying the property originally conveyed in the November 16, 1999, deed. Finally, the agreement proposed that the parties enter into a mutual covenant not to sue. The new City Council discussed the Handleys' proposal at its September 9, 2002, scheduled meeting and passed a resolution accepting the offer.[7] Thereafter, the Handleys and the City entered into a "Mutual General Release and Covenant Not to Sue," and Mayor Ingram executed a "Quitclaim Deed" in favor of the Handleys.

On September 10, 2002, the City filed a "Notice of Voluntary Dismissal" with the trial court seeking to voluntarily dismiss all claims filed in the case. In turn, the Handleys filed their "Notice of Dismissal" seeking to dismiss all of their counterclaims against the City that same day. On September 12, 2002, the Taxpayers, still represented by Mr. Thornton, filed a motion for summary judgment seeking a ruling that, as a matter of law, the City's grant of a portion of the Lucas Property to the Handleys was null and void as an *ultra vires* act, and any subsequent attempt by the City to convey the property to the Handleys remained an *ultra vires* act. That same day, the Taxpayers filed a motion seeking partial summary judgment by asserting that some 20.31 acres of the entire 32.657 acres conveyed to the Handleys was not encumbered by Union Planters' mortgage, and they sought a ruling that, as a matter of law, the Taxpayers were entitled to a judgment on the issue of liability for damages to and profits from the 20.31 acres of land.

On October 4, 2002, the Handleys filed their response to the Taxpayers' motions and alleged that genuine issues of fact remained to be resolved by trial of the matter. In their response, the Handleys argued, in essence, that the Taxpayers did not have standing to contest the City's conveyance of the property at issue to the Handleys, and the Taxpayers' action became moot when

---

[6]Even the Appellees appear confused as to whether these actions were joined or consolidated by the trial court. In the fact section of their brief, the Handleys assert that the January 17, 2002, order entered by the trial court constituted "an order consolidating the City Action and the Individuals' Action for discovery and trial, and directed that an amended and consolidated complaint in both actions be filed." To support this fact, the Handleys cite to the trial court's January 17, 2002, order in the record. They further assert that the consolidated complaint filed by Mr. Thornton was in response to this order.

[7]Due to an apparent oversight, the City Council had to re-vote on the Handleys' proposed settlement at its October 7, 2002, meeting. The City Council, by resolution, voted to re-affirm its decision to accept the Handleys' proposed settlement offer.

the City settled the action with the Handleys, thereby extinguishing any claims the Taxpayers had. That same day, the Handleys filed their own motion for summary judgment against the Taxpayers reiterating the arguments in their response to the Taxpayers' motions.[8] In addition, the Handleys filed a motion with the trial court seeking to amend their counterclaim to include additional causes of action against the Taxpayers, and a motion to amend their answer to include additional affirmative defenses.[9]

On October 9, 2002, the trial court entered an order, pursuant to the agreement between the Handleys and the City, dismissing the City's claims and the Handleys' counterclaims with prejudice. On October 24, 2002, the Taxpayers filed a motion asking the trial court to alter or amend its October 9, 2002, order to reflect that the dismissal was not with prejudice. On November 8, 2002, Union Planters filed its motion for summary judgment in this case. On November 25, 2002, DuPont joined Union Planters' motion for summary judgment.

On January 27, 2003, the trial court entered an order addressing the Taxpayers' motion to alter or amend the court's October 9, 2002, order, stating:

> These *consolidated civil actions* came on to be heard . . . upon the motion of Gene Plant and other individual plaintiffs in Gene Plant et al. v. Kevin E. Handley et al., *Civil Action No. CH-10-211* before the Court (*the "Individuals' Action"*), to alter or amend the Court's order entered on October 9, 2002, dismissing with prejudice the claims and counterclaims asserted by the parties in City of New Johnsonville, Tennessee v. Kevin E. Handley, et al., *Civil Action No. CH-01-179* before the court (*the "City Action"* . . . .)[.]
>
> I.
>
> IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED that the motion of Gene Plant and others to alter or amend the Order of Dismissal be and the same hereby is denied, to the extent the said motion seeks to affect the rights and claims of the parties to the City Action or the legal effect of the Order of Dismissal upon those rights and claims.
>
> II.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the motion of Gene Plant and others to alter or amend the Order of Dismissal be and the same hereby is granted, to the extent that the said motion seeks a clarification by the Court that the Order of

---

[8]Union Planters filed its response to the Taxpayer's motions for summary judgment that same day as well. DuPont filed its response to the Taxpayers' motions on October 9, 2002, adopting, pursuant to Tennessee Rules of Civil Procedure 10.04, Union Planters' responses to the motions. Likewise, Volunteer Title Company, Inc. filed a response on October 9, 2004, adopting the responses contained in Union Planters' response.

[9]The trial court subsequently granted these motions.

Dismissal does not, in and of itself, alter the present procedural posture of the Individuals' Action.

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, notwithstanding the Order of Dismissal does not in and of itself affect the procedural posture of the Individuals' Action, the Court does not hereby rule or purport to rule upon the legal effect of the Order of Dismissal on the claims asserted by the plaintiffs in the Individuals' Action. The legal effect of the Order of Dismissal on those claims shall be and remain as provided by applicable law.

. . . .

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that for all purposes this order is a final order in *City of New Johnsonville, Tennessee v. Kevin Handley, Gloria J. Handley, Volunteer Title Company, Inc., Trustee, and Union Planters Bank, N.A.*, Civil Action No. CH-01-179 before this Court, and the Order of Dismissal shall operate as a complete and final adjudication of all the right [sic] and claims of all parties thereto.

(emphasis added). On February 21, 2003, the Taxpayers filed a motion, pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure, asking the court to set aside its October 9, 2002, order.

On February 21, 2003, the Taxpayers filed a motion asking the trial court for permission to amend their complaint to add additional causes of action related to the City's alleged attempt to ratify the land transaction by settling with the Handleys. That same day, the Taxpayers filed a notice of appeal to this Court to contest the trial court's January 27, 2003 order.[10]

On August 29, 2003, the trial court entered two memorandum opinions addressing the motions for summary judgment filed by the parties. In the first memorandum opinion, the trial court addressed the defendants' motions for summary judgment.[11] The court began by examining the standing issue. The court found that any demand by the taxpayers to the City Council requesting it to correct any illegality would be futile, therefore, any failure on the part of the Taxpayers to make such demand was excused. Next, the trial court concluded that land, especially land gifted to a city, does not constitute "public funds." Therefore, the court concluded that the Taxpayers did not have standing to challenge the City's transfer of 32.657 acres of the Lucas Property to the Handleys.

---

[10]The Taxpayers' notice of appeal provides that they are contesting the trial court's January 23, 2003, order. However, the order, although signed by the trial judge on January 23, 2003, was not filed until January 27, 2003. Therefore, it became effective as of January 27, 2003. *See* Tenn. R. Civ. P. 58 (2004).

[11]This Order is entitled "Memorandum Opinion on Defendants' Motion for Summary Judgment." The order provides that this order is to address Civil Action "No. CH-01-211." As noted below, the trial court uses the same number when addressing the Taxpayers' motion.

Conversely, the trial court held that the Taxpayers did have standing to contest the allegedly illegal business transactions occurring between Councilman Handley and the City. Thus, the trial court granted in part and denied in part the defendants' motions for summary judgment.

Next, the trial court issued a memorandum opinion addressing the Taxpayers' motions for summary judgment.[12] Alluding to its previous finding that the Taxpayers did not have standing to contest the transfer of land by the City to the Handleys, the trial court denied the Taxpayers' motions. On September 19, 2003, the trial court entered an order incorporating the findings from its memorandum opinions.[13] On December 16, 2003, the trial court entered an order setting the case for trial and granting the Taxpayers thirty (30) days to name the City as a defendant in their civil action.[14]

On January 16, 2004, the Taxpayers filed an amended complaint adding the City as a defendant to their civil action.[15] Since the Taxpayers' amended complaint contained essentially the same causes of action and requests for relief related to the land transaction between the Handleys and the City that they previously asserted, the Handleys, on February 17, 2004, filed a renewed motion for summary judgment. That same day, the Handleys filed a notice of their intent to take a voluntary nonsuit as to all of their counterclaims.[16] On March 5, 2004, the trial court entered an order dismissing the Handleys' counterclaims without prejudice. On April 5, 2004, the trial court entered an order, based upon the agreement of the parties, granting the Handleys' renewed motion for summary judgment to the extent the court had already ruled on the land transaction in its previous September 19, 2003, order. On May 27, 2004, the Taxpayers filed a notice of voluntary dismissal regarding their remaining claims. That same day, the Taxpayers filed a second notice of appeal to this Court. On June 2, 2004, the trial court entered an order dismissing the Taxpayers' remaining claims without prejudice.

On appeal, the Taxpayers have presented two issues for our review. At the outset, we must place these issues in the proper context. The Taxpayers are, in essence, asking this Court to

---

[12]This order is entitled "Memorandum Opinion on Plaintiff's Motion for Summary Judgment and for Partial Summary Judgment." Interestingly, this order provides that it too is addressing Civil Action "No. CH-01-211."

[13]Once again, the trial court's order provides that it is addressing Civil Action "No. CH-01-211."

[14]Although we find no such motion in the record, the court's order states that the Handleys filed a motion to dismiss for the Taxpayers' failure to add the City as an indispensable party.

[15]On March 13, 2003, the City had filed a motion seeking to disqualify Mr. Thornton from representing the Taxpayers due to an alleged conflict of interest. The trial court apparently found that no conflict existed and permitted Mr. Thornton to continue his representation of the Taxpayers. On March 22, 2004, the City filed another motion renewing its objection to Mr. Thornton's representation of the Taxpayers in the instant litigation. A hearing was apparently set for June 7, 2004, to argue the motion before the trial court, but subsequent events made the need for a decision on this motion moot.

[16]On February 18, 2004, the Handleys filed an amended notice of their intent to take a voluntary nonsuit on their counterclaims due to a typographical error in their prior notice.

determine whether the trial court erred in granting summary judgment to the Handleys and the other defendants on the Taxpayers' claim contesting the land transaction between the City and Councilman Handley. When considering this primary issue, the Taxpayers ask this Court to entertain the following issues:

I.      Whether the taxpayers of a municipality have standing to challenge an illegal conveyance of real property from a municipality to an elected official of that municipality; and

II.     Whether an illegal conveyance of real property from a municipality to an elected official of that municipality is void under the doctrine of *ultra vires*.[17]

For the reasons set forth more fully herein, we vacate the trial court's order granting the Appellees' partial summary judgment and remand this case to the trial court.

## II.
### JURISDICTION TO ENTERTAIN CERTAIN ISSUES

This Court is required to consider whether or not we have subject matter jurisdiction over an appeal regardless of whether a party presented such issue for our review. *See* Tenn. R. App. P. 13(b) (2004); *Martin v. Washmaster Auto Ctr., Inc.*, No. 01-A-01-9305-CV-00224, 1993 Tenn. App. LEXIS 464, at *3 (Tenn. Ct. App. July 2, 1993); *Huntington Nat'l Bank v. Hooker*, 840 S.W.2d 916, 922 (Tenn. Ct. App. 1991). On appeal, the Handleys assert that this Court is without jurisdiction to entertain the appeal filed by the Taxpayers. Specifically, the Handleys assert that, since the Taxpayers were not parties to the City's action against them, the Taxpayers could not file a motion to alter or amend the court's order dismissing that case. Therefore, the Handleys argue that the Taxpayers' motion, filed on October 24, 2002, did not toll the running of the thirty (30) day period for filing an appeal.[18] *See* Tenn. R. App. P. 4(a) (2004). In turn, they contend that, even if the Taxpayers could file an appeal of the order dismissing the City's action against them, the time for filing an appeal began to run from October 9, 2002, the date the trial court entered the order. Since the Taxpayers did not file their first notice of appeal until February 21, 2003, well beyond the allowed thirty (30) day period, the Handleys argue that this Court has no jurisdiction to review the lawsuit filed by the City. *See* Tenn. R. App. P. 2 (2004) (noting that the Court is without authority to extend the time for filing a notice of appeal set forth in Tenn. R. App. P. 4(a)); *Am. Steinwinter Investor Group v. Am. Steinwinter Inc.*, 964 S.W.2d 569, 571 (Tenn. Ct. App. 1997) ("The 30-day rule for notices of appeal is mandatory and jurisdictional and may be not waived . . . ."). In turn, the Taxpayers argue that their motion to alter or amend tolled the running of the thirty (30) day period.

---

[17]The Appellees have presented numerous issues similar in nature to those raised by the Appellants. However, for reasons more fully explained below, we need not address these additional issues.

[18]Ordinarily, "[i]n a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party . . . under Rule 59.04 to alter or amend the judgment[,] the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." Tenn. R. App. P. 4(b) (2004).

-11-

Furthermore, the Taxpayers contend that, even if the first notice of appeal is not timely, their second notice of appeal permits them to raise all issues related to this consolidated action.

It is apparent to this Court that the parties lost sight of the exact nature of these actions during the course of the proceedings below. On September 4, 2001, the Taxpayers filed a motion with the trial court entitled "Motion to Join in Lawsuit" in which they sought to join the City's lawsuit against the Handleys and other defendants "pursuant to Rule 20.01." On September 17, 2001, Mr. Thornton filed a complaint in the trial court on behalf of the Taxpayers. On January 17, 2002, the trial court entered an order entitled "Order on Motion to Amend Complaint and Second Motion to Amend Complaint" in which the trial court stated as follows:

> *Came the Plaintiff, City of New Johnsonville . . .* and moved the Court for permission to amend its Complaint to add an additional party, averments and prayers for relief.
> The Court . . . is of the opinion that said motion should be granted. *Plaintiff* has sixty (60) days to file a consolidated complaint with all amendments and prayers for relief in this cause.

(emphasis added). Thereafter, on January 24, 2002, Mr. Thornton filed a complaint entitled "Amended and Consolidated Complaint" which provided:

> Come now the *Plaintiffs*, *pursuant to Court Order consolidating the actions filed by Plaintiffs*, and file this Amended and *Consolidated* Complaint restating the allegations of the *Plaintiffs* in *one action*, *consolidated* under Docket Number: CH-01-179.

(emphasis added). Nowhere in the voluminous record filed in this case do we find an order from the trial court either joining or consolidating the actions filed in this case. On appeal, the Handleys refer to the trial court's January 17, 2002, order in their briefs as "an order consolidating the City Action and the Individuals' Action for discovery and trial." The trial court's January 17, 2002, order does nothing of the sort. To the contrary, the order, by its express language, only addressed the City's motion to amend its complaint.

Whether these cases have been joined or consolidated is a matter we do not take lightly due to the effect the characterization of a lawsuit has on our appellate review. The Taxpayers' motion asked for permission to join the lawsuit already filed by the City. Permissive joinder of parties is provided for in Rule 20.01 of the Tennessee Rules of Civil Procedure, which states:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or

occurrences and if any question of law or fact common to all these persons will arise in the action . . . .

Tenn. R. Civ. P. 20.01 (2004); *see also Fred's Fin. Co. v. Fred's of Dyersburg, Inc.*, 741 S.W.2d 903, 907-09 (Tenn. Ct. App. 1987). Consolidation of two separate trials is provided for in Rule 42.01 of the Tennessee Rules of Civil Procedure, and it states:

> When actions involving a common question of law or fact are pending before a court, the court may order all the actions consolidated or heard jointly, and may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Tenn. R. Civ. P. 42.01 (2004).

The interplay between these two procedural rules can be explained in the following terms:

> To understand the requirements for and the consequences of permissive joinder of parties under Rule 20.01, it is useful to distinguish joinder of parties from consolidation of actions under Rule 42.01. Plaintiffs and defendants properly joined under Rule 20.01 are *all parties to the same civil action*, even when the claims by or against them are several, as opposed to joint. Consolidation of separate actions under Rule 42.01, on the other hand, *does not create one action or make those who are parties in one suit parties in another.* Consolidation simply allows a single trial of common issues and permits joint discovery for purposes of judicial economy.
>
> Several consequences may follow from the distinction between joinder and consolidation. *When parties are joined in an action, they and the claims by or against them must be taken into account for a number of important purposes such as determining whether . . . a judgment is a final appealable order[19] . . . . When actions are consolidated, on the other hand, a party or a claim in only one of the actions may not be taken into account for these purposes in the other consolidated actions.*
>
> The prerequisites for joinder and consolidation also differ. Consolidation is proper when there are "actions involving a common question of law or fact pending before a court." For joinder of parties in one action, on the other hand, the additional "transaction or occurrence" test must be satisfied. The claims by or against the parties must be "in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences." When,

---

[19]*See* Tenn. R. App. P. 3(a) (2004); Tenn. R. Civ. P. 54.02 (2004).

> therefore, multiple claims that will entail decisions on common issues
> of law or fact cannot be joined because of limitations on joinder,
> consolidation may provide a beneficial alternative for achieving
> judicial economy.

ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 6-5(b) (1999)
(emphasis added).

The complaint filed by Mr. Thornton on January 24, 2002, rather confusingly refers to the actions as consolidated, yet it states that the actions have become "one action, consolidated under Docket Number: CH-01-179."[20]  However, it is apparent after reviewing the record, that despite the lack of a definitive order, the trial court treated these two lawsuits as consolidated, not joined.  The City's lawsuit was originally docketed as "Civil Action No. CH-01-179."  The Taxpayers' action was originally docketed as "Civil Action No. CH-01-211."  When the Handleys responded to the Taxpayers' motions for summary judgment, their response indicated that it addressed "Civil Action No. CH-01-211."  When the City and the Handleys moved to dismiss their respective claims against each other, the parties' motions both reflected that they were addressing a case docketed as "Civil Action No. CH-01-179."  The trial court's order dismissing the City's lawsuit provides that the order is addressing "Civil Action No. CH-01-179."  When Union Planters filed its motion for summary judgment against the Taxpayers, it listed "Civil Action No. CH-01-211," but the "211" was marked through and "179" written above it.  When the trial court issued the order on the Taxpayers' motion to alter or amend the court's previous order dismissing the City's lawsuit, the order listed both docket numbers, called the cases "consolidated," and referred to them as separate actions.  The trial court's orders addressing the motions for summary judgment filed between the Taxpayers, the

---

[20]"Consolidation does not, however, create one lawsuit where there were two.  It simply allows a single trial and permits joint discovery." ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 6-12(b) (1999).

Handleys, and the other defendants all refer to the action as "Civil Action No. CH-01-211." The trial court's final order dismissing the Taxpayers' remaining claims refers to the case as "Civil Action No. CH-01-211."[21]

Additionally, this Court received a consolidated record, and the parties have briefed these actions as if they were consolidated. Accordingly, we will regard the two cases as consolidated by the trial court. *See Local 2173 of the Am. Fed'n of State, County, and Mun. Employees v. McWherter*, No. 87-34-II, 1987 Tenn. App. LEXIS 2726, at *1 (Tenn. Ct. App. June 5, 1987). Thus, the City's action and the Taxpayers' action remained distinct and separate lawsuits throughout the proceedings below. *Patton v. Aerojet Ordinance Co.*, 765 F.2d 604, 606 (6th Cir. 1985); *Masson v. Anderson*, 62 Tenn. (3 Baxt.) 290, 298-99 (Tenn. 1873); *Chitwood v. Myers*, 443 S.W.2d, 830-31 (Tenn. Ct. App. 1969).

Having characterized these lawsuits, we first address the effect of the trial court's order dismissing the lawsuit between the City and the Handleys. "A consent decree is a contract made final and binding upon the parties by the approval of the court." *City of Shelbyville v. State ex rel. Bedford County*, 415 S.W.2d 139, 144 (Tenn. 1967) (citing *Boyce v. Stanton*, 83 Tenn. 346 (Tenn. 1885)). "Consent decrees, compromise and settlement agreements, and agreed orders are favored by the courts and represent the achievement of an amicable result to pending litigation." *In re Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 Tenn. App. LEXIS 313, at *33 (Tenn. Ct. App.

---

[21]The trial court ultimately allowed the Taxpayers to name the City as a defendant in their lawsuit. Interestingly, a determination that these cases had been joined would necessarily mean that the City would be both a plaintiff and a defendant in the same case.

Apr. 28, 2003). "In the absence of duress, fraud, mistake or collusion a consent judgment is valid and binding, as such, as *between the parties thereto and their privies*." 49 C.J.S. *Judgments* § 187 (1997) (emphasis added). Absent the existence of one of the limited exceptions, a consent order is not appealable by the parties entering into the agreement. *See City of Shelbyville*, 415 S.W.2d at 144; *Bacardi v. Tenn. Bd. of Registration in Podiatry*, 124 S.W.3d 553, 562 (Tenn. Ct. App. 2003); *Bickers v. Lake County Bd. of Educ.*, No. 02A01-9307-CV-00163, 1994 Tenn. App. LEXIS 7, at *3-4 (Tenn. Ct. App. Jan. 13, 1994). Thus, when the City and the Handleys agreed to settle their case and the trial court subsequently entered an order dismissing the City's and the Handleys' claims against each other, neither party could appeal the trial court's order.

Since the Taxpayers' action remained a separate and distinct lawsuit, the Taxpayers could not file a motion to alter or amend or to set aside the trial court's order dismissing the suit between the City and the Handleys. "It is fundamental that '[a] person who is not a party of record to a lawsuit has no standing therein which enables him or her to take part in the proceedings.'" *In re Estate of Reed*, No. W2003-00210-COA-R3-CV, 2004 Tenn. App. LEXIS 424, at *5 (Tenn. Ct. App. July 1, 2004) (citations omitted); *see also* 47 Am. Jur. 2d *Judgments* § 757 (2004) ("The general rule is that strangers to the record, unless authorized by statute, ordinarily have no standing on which to base an application to vacate a judgment."). Moreover, the Taxpayers could not file an appeal contesting the trial court's order regarding the lawsuit between the City and the Handleys. "A party to one action may not appeal from a judgment or order in a second action with which the first is consolidated for trial." 4 C.J.S. *Appeal and Error* § 157 (1993). Accordingly, the Taxpayers have no standing to raise any issues in the instant appeal related to the trial court's disposition of the

City's suit against the Handleys and other defendants. Likewise, this Court is without jurisdiction to entertain any issues raised by the Appellees concerning the City's action against the Handleys.

We also note that, since the Taxpayers voluntarily nonsuited their claim regarding the allegedly illegal business transactions between the City and Councilman Handley, we cannot entertain any issues raised by the parties regarding that claim in this appeal. A plaintiff is generally permitted to take a voluntary nonsuit of his case. *See* Tenn. R. Civ. P. 41.01 (2004). Upon doing so, however, there is no longer any existing controversy regarding those claims to which the plaintiff voluntarily dismissed. Accordingly, this Court cannot entertain an appeal of issues related to the allegedly illegal business transactions between the City and Councilman Handley which the Taxpayers voluntarily dismissed. *See Payne v. Savell*, No. 03A01-9708-CV-00352, 1998 Tenn. App. LEXIS 81, at *5–6 (Tenn. Ct. App. Feb. 5, 1998) (noting that, when a party takes a voluntary nonsuit, the parties cannot appeal the resulting order of dismissal without prejudice); *Bickers v. Lake County Bd. of Educ.*, No. 02A01-9307-CV-00163, 1994 Tenn. App. LEXIS 7, at *4 (Tenn. Ct. App. Jan. 13, 1994) ("A party is estopped or waives his right to appeal when judgment is entered at his request."); *Oliver v. Hydro-Vac Services, Inc.*, 873 S.W.2d 694, 696 (Tenn. Ct. App. 1993) (concluding that a party is ordinarily not aggrieved when no judgment is rendered against him); *Martin v. Washmaster Auto Ctr., Inc.*, No. 01-A-01-9305-CV-00224, 1993 Tenn. App. LEXIS 464, at *6 (Tenn. Ct. App. July 2, 1993) ("No present controversy exists after the plaintiff takes a nonsuit."); *Huggins v. Nichols*, 440 S.W.2d 618, 620 (Tenn. Ct. App. 1968) ("Although there are some exceptions to the rule, the general rule is that a plaintiff or defendant cannot appeal or

prosecute a writ of error from or to a judgment, order, or decree in his own favor, since he is not aggrieved thereby.").

## III.

### SUMMARY JUDGMENT ON THE TAXPAYERS' CLAIM CHALLENGING THE LAND TRANSACTION

Having determined that the Taxpayers' suit remained separate from the City's action against Councilman Handley, we now address the correctness of the trial court's decision to grant partial summary judgment to the Appellees by ruling that "plaintiffs have no standing to challenge the transfer of the 32.657 acres to Defendant Handley and this part of the action must be dismissed."

### *A.*

### *Standard of Review*

"Summary judgments are proper in virtually any civil case that can be resolved on the basis of legal issues alone." *Summers v. Cherokee Children & Family Services, Inc.*, 112 S.W.3d 486, 507 (Tenn. Ct. App. 2002). "A party is entitled to summary judgment where he or she establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law." *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) (citing *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000)); *see also* Tenn. R. Civ. P. 56.04 (2003). The party moving for summary judgment has the burden of proving that the motion satisfies these requirements. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524

-18-

(Tenn. 1991)).  Once the moving party has established that there is no genuine issue of material fact, the burden shifts to the non-moving party to demonstrate, by affidavits or other discovery materials, that there is a genuine issue of material fact to be resolved by trial of the matter.  *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993) (citations omitted).  "In reviewing a motion for summary judgment, the Court must examine the evidence and all reasonable inferences from the evidence in the light most favorable to the non-moving party."  *Stovall*, 113 S.W.3d at 721 (citing *Webber v. State Farm Mut. Auto Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001)).  The trial court should grant a motion for summary judgment "only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion."  *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995) (citing *Byrd*, 847 S.W.2d at 210-11)).

"Summary judgments enjoy no presumption of correctness on appeal."  *Summers*, 112 S.W.3d at 508.  "Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met."  *Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000).  "This court must use the same standard [as the trial court] in reviewing a trial court's judgment granting summary judgment."  *Prince v. Saint Thomas Hosp.*, 945 S.W.2d 731, 733 (Tenn. Ct. App. 1996) (citing *Clifton v. Bass*, 908 S.W.2d 205, 208 (Tenn. Ct. App. 1995)).  Since our inquiry on appeal involves purely questions of law, *Carvell*, 900 S.W.2d at 26, "the standard for reviewing a grant of summary judgment is *de novo* without any presumption that the trial court's conclusions were correct."  *Webber*, 49 S.W.3d at 269; *see also Kelley*, 133 S.W.3d at 591; *Bain*, 936 S.W.2d at 622.

## B.

### *Taxpayer Standing*

"A citizen's standing to sue a governmental entity is a threshold issue that should be resolved before addressing the merits of the case." *Ragsdale v. City of Memphis*, 70 S.W.3d 56, 62 (Tenn. Ct. App. 2001). As our supreme court previously stated in a similar case:

> The initial question is whether our courts will entertain a taxpayer suit contesting the legality of payments made to county officials from public funds; that is, whether a taxpayer/citizen has standing to litigate the issue presented in the complaint.
>
> It is not at this point appropriate to examine the merits of the ultimate question. The Court should determine whether a party may litigate the legality of a public officer's payments to himself, without first deciding whether those payments are, in fact and law, illegal. Because citizen suits do burden the conduct of public affairs, a defendant entity or officer should not be obliged to defend on the merits if he is entitled to a dismissal for lack of standing. Nor should the court critique the conduct of public officials if the cause is not justiciable.

*Cobb v. Shelby County Bd. of Commissioners*, 771 S.W.2d 124, 125 (Tenn. 1989). Standing is a judge-made doctrine used by the courts of this state "'to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action.'" *Phillips v. County of Anderson*, No. E2000-01204-COA-R3-CV, 2001 Tenn. App. LEXIS 308, at \*9 (Tenn. Ct. App. Apr. 30, 2001) (quoting *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). Accordingly, we will begin by addressing the Taxpayers' first issue — whether they have standing to challenge the conveyance of real property from the municipality to an elected official of that municipality.

"The rule in Tennessee is well established that citizens and taxpayers are without standing to maintain a lawsuit to restrain or direct governmental action unless they first allege and establish that they will suffer some special injury not common to citizens and taxpayers generally." *LaFollette Med. Ctr. v. City of LaFollette*, 115 S.W.3d 500, 503 (Tenn. Ct. App. 2003) (citing *Patton v. City of Chattanooga*, 65 S.W. 414, 420–21 (Tenn. 1901)); *see also Badgett v. Rogers*, 436 S.W.2d 292, 294 (Tenn. 1968); *Reams v. Bd. of Mayor & Alderman of McMinnville*, 291 S.W. 1067, 1068 (Tenn. 1927). As a policy justification for this general rule, the Tennessee Supreme Court has stated as follows:

> On the one hand, it is undeniably the right of a taxpayer to know that his taxes are expended properly and are not unlawfully diverted or misused. On the other hand, the courts have long recognized the necessity of allowing municipal officials to perform their duties

without interference from frequent and possibly frivolous litigation and the inexpedience of putting municipal officers at hazard to defend their acts whenever any member of the community sees fit to make the assault, whether for honorable motives or not. The courts have been commensurately reluctant to usurp or supersede the discretion of municipal authorities to determine which municipal undertakings are necessary and appropriate.

*Badgett*, 436 S.W.2d at 293–94; *see also Parks v. Alexander*, 608 S.W.2d 881, 885 (Tenn. Ct. App. 1980) ("The generally acknowledged purpose of this requirement of special damage or private harm to the individual rests in the public policy of protecting public corporations from a profusion of suits.").

However, the general rule regarding taxpayer standing is not without exception. "[T]he courts have recognized an exception to the general rule where it is asserted that the assessment or levy of a tax is illegal or that public funds are misused or unlawfully diverted from stated purposes." *Badgett*, 436 S.W.2d at 294; *see also LaFollette Med. Ctr.*, 115 S.W.3d at 504. The Taxpayers in the instant case, being unable to establish any specific injury not sustained by the citizens of the City in general, rely on this exception to assert they possess standing to contest the land transaction between the City and Councilman Handley. Specifically, the Taxpayers seek to establish that the land transaction at issue constituted an illegal use of "public funds."

In order for a taxpayer to have standing to challenge the legality of the expenditure of public funds, the following elements must be found to exist: (1) the plaintiff/taxpayers have taxpayer status; (2) the taxpayers allege a specific illegality in the expenditure of public funds; and (3) the taxpayers have made a prior demand on the governmental entity asking it to correct the alleged illegality. *Cobb v. Shelby County Bd. of Commissioners*, 771 S.W.2d 124, 126 (Tenn. 1989); *Ragsdale v. City of Memphis*, 70 S.W.3d 56, 62 (Tenn. Ct. App. 2001).

The trial court used this three-prong test in this case to evaluate whether the Taxpayers had standing to challenge the land transaction. Regarding the first element, the trial court ruled that "there is no material dispute of fact that some of the plaintiffs are taxpayers of the City of New Johnsonville." Turning to the third element, the trial court ruled that "any prior demand by the taxpayers to correct the alleged illegality would have been a futile gesture. This being the case, failure to make a prior demand is excused." The largest area of contention between the parties on appeal is the second element required in order for the Taxpayers to have standing to pursue their claim against the Appellees (*i.e.*, whether they allege a specific illegality in the expenditure of "public funds"). The trial court ruled that, as a matter of law, "[l]and, especially land given to the city, is not 'public funds.'" Accordingly, the trial court held that, since the Taxpayers failed to satisfy the second element of taxpayer standing, summary judgment was appropriate as to this claim.

The Taxpayers argue that this ruling constitutes error because "the ordinary and plain meaning of public funds includes property held by a municipality for the benefit of its citizens." Conversely, the Appellees contend that the term "public funds" must mean the diversion of funds

in the form of money derived from taxation in order for taxpayers to have standing. Since the real property at issue was not acquired with tax revenue (*i.e.*, it was a gift), the Appellees argue that a subsequent disposition of the land cannot be considered a disposition of "public funds."

Our independent review of the law applicable to the present case reveals that the trial court applied an incorrect legal standard when granting partial summary judgment to the Appellees in this case. Stated differently, to ascertain if the Taxpayers in the instant case have standing, we need not determine if land owned by a municipality constitutes "public funds" as the parties suggest in their briefs.

The Taxpayers alleged in their complaint that the land transaction between the City and Councilman Handley violated provisions in the City Charter as well as section 12-4-101(a)(1) of the Tennessee Code. Section 12-4-101(a)(1) provides, in relevant part, as follows:

> It is unlawful for any officer, committee member, director, or other person whose duty it is to vote for, let out, overlook, or in any manner to superintend any work or any contract in which any municipal corporation, county, state, development district, utility district, human resource agency, or other political subdivision created by statute shall or may be interested, to be directly interested in any such contract. "Directly interested" means any contract with the official personally or with any business in which the official is the sole proprietor, a

partner, or the person having the controlling interest. "Controlling interest" includes the individual with the ownership or control of the largest number of outstanding shares owned by any single individual or corporation. . . .

Tenn. Code Ann. § 12-4-101(a)(1) (2003). The legislature also set forth the penalty for violating section 12-4-101(a)(1) of the Tennessee Code, stating:

> Should any person, acting as such officer, committee member, director, or other person referred to in § 12-4-101, be or become directly or unlawfully indirectly interested in any such contract, such person shall forfeit all pay and compensation therefor. Such officer shall be dismissed from such office the officer then occupies, and be ineligible for the same or a similar position for ten (10) years.

Tenn. Code Ann. § 12-4-102 (2003).

In *State ex rel. Wallen v. Miller*, 304 S.W.2d 654, 656 (Tenn. 1957), our supreme court noted that the legislature did not include within section 12-4-101 and section 12-4-102 of the Tennessee Code a procedure for enforcing these provisions. Accordingly, the supreme court stated that "it is fundamental that for the enforcement of a statute of this kind where there is no statute prescribing the procedure that the proceedings should be prosecuted according to the practice under the common

law[.]" *Miller*, 304 S.W.2d at 657 (citing *Olsen v. Sharpe*, 235 S.W.2d 11 (Tenn. 1950)). In setting

forth the procedure to apply when a violation of section 12-4-101 of the Tennessee Code is alleged,

the court stated:

> Under such circumstances it seems to us that this statement is
> applicable:
>
> > "Public wrongs or neglect or breach of public duty
> > cannot be redressed at a suit in the name of an
> > individual or individuals whose interest in the right
> > asserted does not differ from that of the public
> > generally, or who suffers injury in common with the
> > public generally, even, it seems, though his loss be
> > greater in degree, unless such right of action is given
> > by statute. In cases of purely public concern and in
> > actions for wrongs against the public, whether actually
> > committed or only apprehended, the remedy, whether
> > civil or criminal, is as a general rule *by a prosecution*
> > *instituted by the state in its political character, or by*
> > *some officer authorized by law to act in its behalf, or*
> > *by some of those local agencies created by the state*

*for the arrangement of such of the local affairs of the community as may be intrusted to them by law.*"

"In the enforcement of matters of public interest it is generally recognized that *the attorney general appearing as a public officer is a proper party to maintain litigation.*"  39 Am.Jur., p. 863, Sec. 11.

In a proceeding of this kind it is well said that:

"In the absence of constitutional or statutory regulations providing otherwise, *quo warranto* proceedings are *the only proper remedy in cases in which they are available.*"  74 C.J.S. *Quo Warranto*, sec. 4, p. 179; *State ex rel. Bryant v. Maxwell*, 189 Tenn. 187, 224 S.W.2d 833.

*Id*. at 657–58 (emphasis added). "Here a civil remedy, that of *quo warranto*,[22] is *the only one that is available* in view of the fact the legislators did not see fit to provide any additional procedure for their enforcement." *Id*. at 658 (emphasis added); *see also State ex rel. Abernathy v. Anthony*, 335 S.W.2d 832, 833 (Tenn. 1960).

The legislature has chosen to codify the common law remedy of *quo warranto* in section 29-35-101 *et seq*. of the Tennessee Code. *See City of Fairview v. Spears*, 359 S.W.2d 824, 825 (Tenn. 1962) (applying the statutory codification of the *quo warranto* to a citizen's private suit against a municipality); *Miller*, 304 S.W.2d at 658. "Actions based upon violations of T.C.A. § 12-4-101 *et seq*. are governed by the procedure set out in T.C.A. § 29-35-101 *et seq*. . . ." *Town of Smyrna ex rel. Odom v. Ridley*, 730 S.W.2d 318, 321 (Tenn. 1987). Accordingly, since the Taxpayers seek relief under section 12-4-101 of the Tennessee Code, their lawsuit must be evaluated for its compliance with section 29-35-101 *et seq*. of the Tennessee Code.[23]

---

[22] *Quo warranto* is a common law remedy characterized in the following terms:

> "In its broadest sense, *quo warranto* is a writ of inquiry as to the warrant for doing the acts of which complaint is made. It is the remedy or proceeding by which the sovereign or state determines the legality of a claim which a party asserts the use or exercise of an office or franchise and ousts the holder from its enjoyment, if the claim is not well founded, or if the right to enjoy the privilege has been forfeited or lost." 44 Am.Jur., p. 88, Sec. 2.

*Miller*, 304 S.W.2d at 658.

[23] "Article VII, section 1, of the [Tennessee] Constitution declares that county officers . . . shall be removable from office for malfeasance or neglect of duty and clothes the legislature with power to prescribe the mode of procedure through which removal may be affected." *State ex rel. Complainant v. Ward*, 43 S.W.2d 217, 219 (Tenn. 1931). We are cognizant of the fact that the legislature has provided for a suit by *private citizens* to challenge the legality of a public officials actions. Section 6-54-107 of the Tennessee Code provides, in relevant part, as follows:

> (a) No person holding office under any municipal corporation shall, during the time

(continued...)

for which such person was elected or appointed, be capable of contracting with such corporation for the performance of any work *which is to be paid for out of the treasury*. Nor shall such person be capable of holding or having any other direct interest in such a contract. "Direct interest" means any contract with any business in which the official is the sole proprietor, a partner, or the person having the controlling interest. "Controlling interest" includes the individual with the ownership or control of the largest number of outstanding shares owned by any single individual or corporation.

(b) No officer in a municipality shall be indirectly interested in any contract to which the municipality is a party unless the officer publicly acknowledges such officer's interest. "Indirectly interested" means any contract in which the officer is interested but not directly so, but includes contracts where the officer is directly interested but is the sole supplier of goods or services in a municipality.

Tenn. Code Ann. § 6-54-107 (2003) (emphasis added). Section 6-54-108 of the Tennessee Code provides as follows:

Every officer of such corporation who shall unlawfully be concerned in making such contract, or who shall unlawfully pay money upon the same to or for any person declared incapable in § 6-54-107, shall forfeit the amount so paid; and such officer shall be jointly and severally liable to an action for the same, *which action may be prosecuted by any citizen of the corporation in its name.*

Tenn. Code Ann. § 6-54-108 (2003) (emphasis added).

One member of this Court has explained the operation of the aforementioned statutes by stating:

Standing is a judge-made doctrine whose purpose is to determine whether a party should be permitted to pursue a claim. *Knierim v. Leatherwood*. 542 S.W.2d 806, 808 (Tenn. 1976) and *Curve Elementary School Parent and Teacher's Organization v. Lauderdale County School Board*, 608 S.W.2d 855, 858 (Tenn. Ct. App. 1980). It calls upon the court to determine whether the plaintiff has alleged such a personal stake in the outcome to warrant its invocation of the court's jurisdiction and to justify the exercise of the court's powers on its behalf. *See Browning-Ferris Industries, Inc. v. City of Oak Ridge*, 644 S.W.2d 400, 402 (Tenn. Ct. App. 1982).

In cases involving statutory causes of action, a party's standing may depend upon requirements contained in the statute creating the cause of action. If these requirements have been defined by statute, it is proper for the courts to conclude that the General Assembly has exercised its constitutional prerogative to determine the conditions under which a party will be permitted access to the courts. Thus, courts should defer to legislative standing criteria contained in statutes creating new causes of action.

Private citizens have rarely been given standing to bring suit to challenge the actions of public officials. *Metropolitan Government ex rel. Anderson v. Fulton*, 701 S.W.2d 597, 601 (Tenn. 1985). Thus, in the absence of legislative authority, a private citizen must demonstrate either a special interest, status or wrong not common to the public as a whole or that the proper public officials have not taken remedial action after being called upon to do so. *See Bennett v. Stutts*,

(continued...)

Section 29-35-101 of the Tennessee Code provides, in relevant part, as follows:

> An action lies *in the name of the state* against the person or corporation offending, in the following cases:

[23](...continued)
521 S.W.2d 575, 576 (Tenn. 1975); *Badgett v. Rogers*, 222 Tenn. 374, 379, 436 S.W.2d 292, 294 (1968); *Bayless v. Knox County*, 199 Tenn. 268, 274, 286 S.W.2d 579, 582 (1955); and *State ex rel. Vaughn v. King*, 653 S.W.2d 727, 729 (Tenn. Ct. App. 1982).

Cases involving municipal officials' self-dealing in public contracts are among the rare situations where the General Assembly has specifically authorized private citizens to challenge the legality of the actions of public officials. . . . It is reasonable to infer from the enactment of this statute that the General Assembly understood that a contract involving self-dealing by public officials is the very type of case in which the cooperation of other public officials should not be reasonably expected. *See Burns v. City of Nashville*, 142 Tenn. 541, 574, 221 S.W. 828, 837 (1920). It is also reasonable to infer that the General Assembly determined that conflicts of interest of local governmental officials were so inimical to the public interest that private citizens should be permitted to take remedial action.

*Metro. Gov't for Nashville & Davidson County ex rel. Anderson v. Fulton*, No. 86-221-II, 1986 Tenn. App. LEXIS 3615, at *25–28 (Tenn. Ct. App. Dec. 31, 1986) (Koch, J., concurring).

Our supreme court has also had occasion to address an instance where a *quo warranto* proceeding under section 12-4-101 of the Tennessee Code was joined with a citizen's private suit brought pursuant to section 6-54-108 of the Tennessee Code. *Town of Smyrna ex rel. Odom v. Ridley*, 730 S.W.2d 318, 319 (Tenn. 1987). In dismissing the citizen's private suit, the court stated:

> The city cannot recover two forfeitures, one under T.C.A. § 12-4-102 and the other under T.C.A. § 6-54-108. In either case, the money forfeited belongs to the city, but it is not due a double recovery. We find no legislative intent for such a double recovery and forfeiture in the circumstances of this case. These statutes were intended to provide alternative remedies. . . .The *quo warranto* action by the State affords complete relief in this case and *must take precedence over the § 6-54-107 action by the city*; the latter should have been dismissed. The error is so plain that we notice it now and dismiss the complaint insofar as it seeks to join the "action of debt" under T.C.A., § 6-54-107 *et seq.* with the *quo warranto* under T.C.A., § 12-4-101 *et seq.*

*Ridley*, 730 S.W.2d at 322 (emphasis added). The Taxpayers in the instant case did not file a claim under section 6-54-108 of the Tennessee Code. Therefore, we need not evaluate whether the Taxpayers lawsuit is in actuality a suit under section 6-54-108 of the Tennessee Code. Since the Taxpayers expressly stated in their complaint that they are alleging a violation of section 12-4-101 of the Tennessee Code, we are only concerned with their ability to pursue a claim under that statute.

. . . .

> (2) Whenever any public officer has done, or suffered to be done, any
>
> act which works a forfeiture of that officer's office[.]

Tenn. Code Ann. § 29-35-101 (2003) (emphasis added). Pursuant to section 12-4-102 of the Tennessee Code, a public officer found to have violated section 12-4-101 of the Tennessee Code "*shall* be dismissed from such office the officer then occupies." Tenn. Code Ann. § 12-4-102 (2003) (emphasis added). Moreover, the legislature has expressly provided as follows:

> The suit is brought *by the attorney general* for the district or county,
>
> when directed so to do by the general assembly, or by the governor
>
> and attorney general of the state concurring.

Tenn. Code Ann. § 29-35-109 (2003) (emphasis added).[24] At no point during the proceedings below did the Taxpayers seek to comply with section 29-35-101 *et seq*. of the Tennessee Code by having the district attorney general prosecute the lawsuit on their behalf. However, this omission does not end our inquiry.

---

[24] The statutory scheme also sets forth the procedure for filing the suit on behalf of a private individual, Tenn. Code Ann. § 29-35-110 (2003), the proper venue for filing the suit, Tenn. Code Ann. § 29-35-111 (2003), and the content of the complaint, Tenn. Code Ann. § 29-35-112 (2003). Even when a suit is brought on behalf of private citizens, "it must be in the name of the Attorney General." *State ex rel. Wallen v. Miller*, 304 S.W.2d 654, 659 (Tenn. 1957). The district attorney general, at his discretion, may dismiss the suit should he determine that it is improperly instituted. *Id*. "[I]f the district attorney general has the right to dismiss the suit at any stage when it appears to him that the suit is improperly brought, he would have the right to refuse to bring it in the first place, if he thought it was not in the interest of the public to do so." *State v. Parker*, 315 S.W.2d 396, 397 (Tenn. 1958).

Our supreme court has allowed for a limited exception to the requirement that suits be instituted by the district attorney general, stating:

> It is the settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally. *Patton v. City of Chattanooga*, 108 Tenn. 197, 65 S.W. 414 (1901); *Skelton v. Barnett*, 190 Tenn. 70, 227 S.W.2d 774 (1950); *Badgett v. Broome*, 219 Tenn. 264, 409 S.W.2d 354 (1966).
>
> . . . .
>
> If the District Attorney General, in matters such as this, should act arbitrarily or capriciously or should be guilty of palpable abuse of his discretion in declining to bring such an action, or in authorizing its institution, the courts will take jurisdiction upon the relation of a private citizen, in the name of the State of Tennessee. *See People ex rel. Graves v. District Court of Second Judicial Circuit*, 37 Colo. 443, 86 P. 87; *White v. Eagle Oil & Ref. Co. v. Gunderson*, 48 S.D. 608, 205 N.W. 614, 43 A.L.R. 397; *State ex rel. Lamb v. Cunningham*, 83 Wis. 90, 53 N.W. 35.
>
> When citizens sue to rectify a public wrong, under these circumstances, a copy of the complaint shall be served upon the

District Attorney General. It shall be the duty of the trial court forthwith to conduct an *in limine* hearing designed to determine whether to permit plaintiffs to proceed. If it be determined that the District Attorney General's refusal to bring the action, or to authorize the use of his name in its institution, was improper or unjustified, or that plaintiff's case is *prima facie* meritorious, the trial court shall permit the action to proceed.

*Bennett v. Stutts*, 521 S.W.2d 575, 577 (Tenn. 1975); *see also Metro. Gov't for Nashville & Davidson County ex rel. Anderson v. Fulton*, No. 86-221-II, 1986 Tenn. App. LEXIS 3615, at *6 (Tenn. Ct. App. Dec. 31, 1986) ("Private citizens may not maintain a *quo warranto* action without first showing that the acts of public officials affected a special interest or caused them loss not a common injury to the public generally and may not do so unless the District Attorney has unreasonably or improperly refused to bring the suit."); *Wooten v. Macon County*, 1988 Tenn. App. LEXIS 83, at *16–17 (Tenn. Ct. App. Feb. 17, 1988) ("It appears to be well established that actions to enforce T.C.A. § 12-4-101 *et seq.* are suits in the nature of *quo warranto* which generally may be prosecuted only by the District Attorney General on behalf of the State and that a private citizen has no standing to pursue an action for illegal actions of a public official without showing a special injury thereform."); *State ex rel. Vaughn v. King*, 653 S.W.2d 727, 729 (Tenn. Ct. App. 1982) ("Our supreme court has held in [*Bennett*] that private citizens cannot maintain a *quo warranto* action complaining of the acts of public officials unless the private individuals aver a special interest or injury not common to the public generally.").

As previously noted, the Taxpayers in the instant case sought to establish that the exception set forth in *Badgett* applied because they were unable to establish an injury different from the public at large. *See Badgett v. Rogers*, 436 S.W.2d 292, 294 (Tenn. 1968) (stating that taxpayers may proceed with a lawsuit alleging an illegal use of public funds even though they are unable to establish an injury different from that sustained by the public at large). Having failed to allege an injury different from that sustained by the public at large in that instance, the Taxpayers necessarily fail to do so in this instance as well. Moreover, a copy of the Taxpayers' complaint was never submitted to the district attorney general, and the record is devoid of any mention of a hearing held by the trial court to determine if the Taxpayers should be allowed to proceed without the district attorney general's approval. Accordingly, the Taxpayers cannot avail themselves of the limited exception set forth in *Bennett.* As such, the trial court, albeit for an erroneous reason, was correct to conclude that the Taxpayers do not have standing to pursue their claim against the Appellees.[25]

Although the Taxpayers do not have standing to pursue their claim in its present form, we are not inclined to dismiss their lawsuit outright by affirming the trial court's grant of partial summary judgment on this claim. In resolving this issue, we are guided by a prior decision of this Court, stating:

> The present record does not demonstrate that the relators or
>
> any of them has sustained any special damage resulting from the

---

[25] Ordinarily, we will affirm a trial court's decision correct in result, but rendered upon an erroneous legal basis. *See Cont'l Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999).

wrongful acts complained of, that is, no damage which would not be sustained in common with all other citizens of Macon County. Therefore, relators have no standing to pursue this suit except in the name of the District Attorney General or by special authority granted by the Trial Court under *Bennett v. Stutts*, *supra* . . . .

In this posture of the proceeding, it does not appear to be in order to summarily dismiss the suit. The reason for this is that the relators have undertaken to state and support a suit on behalf of the public which, if meritorious ought to be prosecuted by the District Attorney General. It would therefore be manifestly unfair to the public and to the District Attorney General to dismiss this suit without an adequate opportunity to the District Attorney to pursue the suit on behalf of the public.

Under the authorities discussed herein, the Trial Judge should require the District Attorney General, after investigating and considering all elements of the present suit, to make his discretionary decision as to whether the suit has merit and should be prosecuted, and to ask that his name be substituted for the present relators and proceed with the prosecution of the case, including resistance to the defendant's motion for summary judgment, to authorize the relators to proceed in his name or to move for dismissal.

If the Trial Court finds that the motion of the District Attorney General to dismiss or his failure to enter or authorize prosecution of the suit is reasonably within his discretionary powers, the motion should be sustained.

If the Trial Court finds that the decision of the District Attorney General not to prosecute or authorize prosecution, or failure to make a decision is "arbitrary, capricious, or a palpable abuse of discretion", the Trial Court should overrule the motion to dismiss and grant special permission to the relators to proceed without participation of the District Attorney General as provided in *Bennett v. Stutts*, *supra*.

*Wooten v. Macon County*, 1988 Tenn. App. LEXIS 83, at *20–22; *see also Munsey v. Russell Bros.*, 213 S.W.2d 286, 289 (Tenn. Ct. App. 1948).

In accordance with our statement in *Wooten*, we vacate that portion of the trial court's order awarding summary judgment to the Appellees on this issue. The Taxpayers' cause of action challenging the land transaction between the City and Councilman Handley is remanded to the trial court for further proceedings not inconsistent with this opinion.[26] Due to our holding in this case,

---

[26] We are mindful that DuPont and the City have raised for this Court's consideration the issue of whether the trial court should have disqualified Mr. Thornton from representing the Taxpayers in this case. However, the trial court never rendered a decision on the motion due to the grant of partial summary judgment and the Taxpayers' subsequent decision to nonsuit their remaining claims prior to the hearing on the motion. During the pendency of this appeal, the City filed a motion asking this Court to disqualify Mr. Thornton from representing the Taxpayers on appeal. This Court

(continued...)

it is not necessary that we reach the second issue raised by the Taxpayers on appeal, therefore, it is pretermitted.

## IV.

### CONCLUSION

Since these lawsuits were consolidated and not joined, this Court is without jurisdiction to entertain the issues presented by the parties relating to the City's lawsuit against the Handleys and other defendants. We are also without jurisdiction to entertain any issues related to the claim which the Taxpayers voluntarily nonsuited. As for the trial court's decision to grant the Appellees summary judgment on the Taxpayers' challenge to the land transaction between the City and Councilman Handley, we vacate the trial court's order and remand this case to the trial court for further

---

[26](...continued)
denied the City's motion.

Rule 6 of the Rules of the Court of Appeals of Tennessee provides, in relevant part, as follows:

> (a) Written argument in regard to each issue on appeal shall contain:
> (1) A statement by the appellant of the *alleged erroneous action of the trial court* which raises the issue . . . *with citation to the record where the erroneous or corrective action is recorded.*
> (2) A statement showing how such *alleged error* was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

Since the trial court never had an opportunity to rule upon this motion, we have no alleged error to review on appeal. Moreover, this Court may only entertain a trial court's final judgments. *See* Tenn. R. App. P. 3(a) (2004). Since the trial court never entered a judgment on the City's motion, we have no judgment on this issue to review on appeal. *See Thompson v. Dickerson*, No. 02A01-9702-CV-00034, 1997 Tenn. App. LEXIS 547, at *8 (Tenn. Ct. App. Aug. 1, 1997).

In passing on this issue, we must also take into account our holding in this case. The district attorney general's potential involvement in this case on remand may render a decision on the issue moot. We are also mindful that, in compliance with our holding and the aforementioned authorities, the potential exists that the Taxpayers may be permitted to pursue their claim without the involvement of the district attorney general. In the event that this contingency occurs, the City is free to re-file its motion at the appropriate time so that the trial court may render a decision on the issue.

proceedings not inconsistent with this opinion. Costs of this appeal are taxed to the Appellants,

Gene Plant, *et al*. and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE